**In re Robert Gerald PERKINS, and Delores Ann Perkins, Debtors.**

**Bankruptcy No. 84–01921.**

United States Bankruptcy Court,
N.D. Oklahoma.

July 15, 1985.

Gary W. Wood, Tulsa, Okl., for debtor.

Lonnie D. Eck, Tulsa, Okl., Trustee.

Curtis L. Craig, Barber & Mullon, Tulsa, Okl., for Associates Financial Services, Inc.

## ORDER GRANTING CONFIRMATION

MICKEY D. WILSON, Bankruptcy Judge.

Debtors filed their petition seeking relief under Chapter 13 of the Bankruptcy Code on December 21, 1984, and submitted their Chapter 13 plan on January 3, 1985. Debtors earn $2,387.00 per month and propose that the total amount of their disposable income, $410.00 per month, be used to pay percentages of the debt owed to creditors of this estate for a period of thirty-six months. Priority claims pursuant to 11 U.S.C. § 507 are to be paid $50.00 per month for fourteen months. Secured claims totaling approximately $8,592 are to be paid between $86.00 and $92.00 per month for at least twenty-four months until the lesser sum of the principal and interest or value of the collateral has been paid. Unsecured claims totaling approximately $16,317.00 are to be paid the remaining balance of the disposable income until 22% of those claims, excluding interest, have been paid.

■ Debtors' plan is misleading in that it lists Associates Financial Services, Inc. (Associates) as a creditor with a secured claim against the estate. Debtors' Chapter 13 statement is also misleading in that it lists Associates as having a secured claim and notes that the debtor, Robert Gerald Perkins, co-signed a promissory note for the loan his son received from Associates. During the hearing held on confirmation of the plan February 26, 1985, it was learned that the debtors' son, Bruce Perkins, co-signed a promissory note granting a security interest in his own household goods so that his father, Robert Gerald Perkins, could obtain a loan from Associates. Bruce Perkins is not a debtor in this case. Thus, the only claim that Associates can have against this bankruptcy estate is an unsecured claim for the amount borrowed.

Since Associates' claim against the estate must be treated as an unsecured claim, it follows that this will create two separate classifications of unsecured claims. Associates is scheduled to be paid 100% of the sum due under the terms of the note while it is proposed that all other unsecured claims be paid approximately 22% of the amount due. At the confirmation hearing on the plan, the trustee interposed his objection to the plan, arguing that the plan is not proposed in good faith and unfairly discriminates against creditors of the same class. Associates has attempted to aid and assist the Court in justifying the separate classifications by filing a brief in support of that treatment.

■ Before a plan can become effective, it must be confirmed by the Bankruptcy Court. Six criteria necessary for confirmation are set forth in 11 U.S.C. § 1325(a).[1]

---

1. § 1325 Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid.

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured

The trustee has raised the question of "good faith" here. Courts have been sharply divided over the meaning of "good faith" when a plan offers a low percentage of repayments to unsecured creditors.[2] The issue of "good faith" in this context and the legislative history behind 11 U.S.C. § 1325(a) were thoroughly analyzed in *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir. 1982), where the appellate court held that 11 U.S.C. § 1325(a)(3) does not require any particular level of minimum repayment. This Court adopts the analysis and decision of the appellate court. "Good faith" guidelines have been formulated and utilized in several other decisions. Some of these guidelines are:

(1) substantiality of payment;

(2) debtor's ability to pay;

(3) whether the debtor has previously filed a bankruptcy petition;

(4) the extent and nature of the debts;

(5) the classifications proposed for unsecured claims;

(6) the extent of the preferential treatment between classes;

(7) the debtor's inability to gain discharge of large claims under Chapter 7; and

(8) the relation of attorney fees and administrative costs to the distribution to creditors with unsecured claims.

See *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982); *Worthen Bank & Trust Co., N.A. v. Cook (In re Cook),* 26 B.R. 187 (D.N.M.1982); *In re Blackwell,* 5 B.R. 748 (Bankr.W.D.Mich.1980). The Court also adopts these guidelines in analyzing the "good faith" issue in this case. Debtors have proposed to use all their disposable income to pay creditors under the plan. Even though debtors have disposable income, they are eligible to file for straight liquidation of their debts under Chapter 7 of the Bankruptcy Code. Instead, they have chosen to file a Chapter 13 petition to attempt repayment of some of their debts. In doing so, they attempt to benefit both their creditors and themselves in this case. In consideration of all pertinent factors and proposals present in this case, the Court concludes that the plan has been filed in good faith.

For debtors' plan to be confirmed, it must not only be proposed in good faith but must comply with 11 U.S.C. § 1322(b)(1) as to its contents. The debtors' plan proposes to repay the sole unsecured creditor holding a note co-signed by the debtors' son 100%, while all other unsecured creditors are to be paid approximately 22%. In a decision rendered prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Public Law 98–353), the Fifth Circuit was faced with a similar issue. In *Public Finance Corporation v. Freeman,* 712 F.2d 219, 10 B.C.D. 1344 (5th Cir.1983), the appellate court held that (former) 11 U.S.C. § 1322(b)(1)[3] permitted creditors holding notes co-signed by the debtor and a third party to be designated as members of a separate class and that thereafter, 11 U.S.C. § 1322(a)(3) required only that all claims in each class be accorded identical

---

claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

**2.** A comprehensive discussion of the debate can be found in Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis & Proposal for Change,* 55 Am.Bankr.L.J. 271 (Summer, 1981)

**3.** 11 U.S.C. 1322(b) Subject to subsections (a) and (c) of this section, the plan may—(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;

treatment. Since many previous decisions had disagreed with this reasoning and confusion reigned among the circuits concerning the segregation of unsecured claims, Congress expanded 11 U.S.C. § 1322(b)(1) in 1984 by adding in pertinent part:

> ... however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

In expanding this section to allow separate classification of unsecured claims and thus different treatment of those claims with a co-signer liable on a consumer debt with the debtor, Congress changed the basic intent and purpose of the Bankruptcy Code by statutorily sanctioning discrimination among creditors holding unsecured claims. This ability to discriminate is designed to induce, encourage and persuade debtors to file their petition seeking relief under Chapter 13 of the Bankruptcy Code instead of Chapter 7. Floor comments made by Representatives on March 21, 1984, support the increased use of Chapter 13 by debtors.[4]

Debtors have proposed 100% repayment to the one creditor holding an unsecured claim that has been co-signed and approximately 22% to all other creditors with unsecured claims. Thus, debtors have segregated the unsecured claims in accordance with 11 U.S.C. 1322(b)(1) as amended. This segregation is not *ipso facto* unfair because it provides a greater percentage of repayment to one creditor as compared to the rest. The debtors, however, do bear the burden of showing that the proposed classification does not unfairly discriminate. *Amfac Distribution Corporation v. Wolff (In re Wolff)*, 22 B.R. 510, 9 B.C.D. 451 (Bankr. 9th Cir.1982).

Since legislative history specifically concerning the 1984 Amendment to 11 U.S.C. 1322(b)(1) is nonexistent, the Court must consider decisions rendered pursuant to that section to aid in the determination of what constitutes "unfair" discrimination. In doing so, this Court notes that a test for unfair discrimination was created in *In re Kovich*, 4 B.R. 403 (Bankr.W.D.Mich.1980), refined in *In re Dziedzic*, 9 B.R. 424 (Bankr.S.D.Tex.1981), and has been utilized by numerous courts since. *See In re Bowles*, 48 B.R. 562, 12 B.C.D. 1297 (Bankr.E.D.Va.1985); *In re Moore*, 31 B.R. 12 (D.S.C.1983); *In re Ratledge*, 31 B.R. 897 (Bankr.E.D.Tenn.1983); *Amfac Distribution Corporation v. Wolff, (In re Wolff)*, 22 B.R. 510, 9 B.C.D. 451 (Bankr. 9th Cir.1982); *Worthen Bank & Trust Co., N.A. v. Cook (In re Cook)*, *supra; Barnes v. Whelan*, *supra; In re Blackwell*, *supra.* This Court adopts the test which sets forth

---

4. Floor comments are the only source available to indicate what Congress intended by provisions included in the Bankruptcy Amendments and Federal Judgeship Act of 1984. "... [T]he Supreme Court, far from approving the exclusion of less formal material, has repeatedly interpreted legislation by referring to statements made in floor debates and hearings." *International Telephone & Telegraph Corporation v. General Telephone & Electronics Corporation*, 518 F.2d 913, 921 (9th Cir.1975).

House representatives have commented on debtor use of Chapter 13 rather than Chapter 7 as follows:

> ... [E]conomic conditions cannot account for the high number of debtors who have chosen to discharge all their debt in a straight chapter 7 bankruptcy when they could have completed repayment of such debts under chapter 13.
>
> \* \* \* \* \* \*
>
> The changes incorporated in H.R. 5174 are badly needed and will go a long way toward

curbing the increasing number of unnecessary chapter 7 straight bankruptcy filings and toward guaranteeing the continued availability of unsecured credit to the average American consumer. 130 Cong.Rec. H 1807 (daily ed. Mar. 21, 1984) (statement of Representative Roukema).

> ... Forty-two percent of debtors discharging all debts had similar income levels and asset and debt characteristics as those repaying their debts through a chapter 13 repayment plan. These unnecessary filings have resulted in a curtailment of unsecured credit for many of those in our society and increased the cost of that credit to others. 130 Cong.Rec. H 1828 (daily ed. Mar. 21, 1984) (statement of Representative Kolter)

See also statements made by Representative Brown, 130 Cong.Rec. H 1832 (daily ed. Mar. 21, 1984)

the following factors to aid in the determination of whether discrimination is unfair:

(1) whether the discrimination has a reasonable basis;

(2) whether the debtor can carry out a plan without such discrimination;

(3) whether such discrimination is proposed in good faith, and

(4) the treatment of the class discriminated against.

■ The record in this case demonstrates that the discrimination among creditors with unsecured claims has been proposed in good faith and in light of 11 U.S.C. § 1322(b)(1) as amended. Associates forms a separate class by virtue of the concomitant effect of the debtors' relationship with their son. The debtors could not carry out this plan without such discrimination because they may attempt to repay Associates outside of the plan to protect their son from creditor pressure and thus lessen the plan's likelihood for success. The debtors propose to use their total disposable income to pay their creditors and have proposed to pay the majority of creditors with unsecured claims the greatest percentage of debt owed possible for them to pay. The discrimination does have a reasonable basis and debtors have shown that the separate classification of unsecured claims does not unfairly discriminate. Both creditors and debtors will benefit by the use of this plan. Therefore, confirmation of the plan as proposed is granted in accordance with the law.

AND IT IS SO ORDERED.