**In re Howard M. HAMILTON, Jr., Jeannine H. Hamilton, Debtors.**

**Bankruptcy No. 7–89–00526.**

United States Bankruptcy Court, W.D. Virginia.

June 22, 1989.

Jonna McGraw, Roanoke, Va., for debtors.

J. Glenwood Strickler, Roanoke, Va., Chapter 13 Trustee.

Joseph W.H. Mott, Asst. U.S. Atty., Roanoke, Va., for I.R.S.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court for decision involves the second amended Chapter 13 plan of the debtors. There are two issues involved. The Internal Revenue Service has objected to confirmation of the plan on the ground that there is no provision in the proposed plan for the payment of the secured portion of its claim. The plan also proposes to classify unsecured creditors pursuant to 11 U.S.C. § 1322(b)(1).

### Facts

On March 24, 1989, the debtors filed their joint petition for relief under Chapter 13 of the Bankruptcy Code. Thereafter, the debtors filed a plan which proposed to pay creditors a composition of their debts over a forty-eight (48) month repayment schedule. Based upon some objections to the initial plan, the debtors filed two amended plans. The second amended plan is dated May 10, 1989, and proposes to pay creditors over a sixty (60) month period.

The plan designates three secured creditors to be paid directly by the debtors during the plan payment period. Two of these secured creditors hold liens on the debtors' residence and the third creditor holds a lien on two automobiles.

With respect to the unsecured creditors, the plan provides that creditors entitled to priority under 11 U.S.C. § 507 shall be paid in full prior to any distribution to other unsecured creditors. The remaining unsecured creditors are divided into two classes. Class A unsecured creditors are lending institutions which have extended credit to the children of the debtors for educational loans. The debtors are comakers on these loans with their children. Class B creditors are all other unsecured creditors whose claims are duly proved and allowed. According to computation by the debtors, Class A unsecured creditors will be paid approximately 14% of their claims and Class B unsecured creditors will be paid approximately 5% of their claims. The fund available for distribution to unsecured creditors after payment of priority creditors would be split equally between Class A and Class B unsecured creditors. However, Class A unsecured creditors' claims total approximately $14,000.00 and Class B creditors' claims total approximately $43,000.00.

The amounts which the debtors would pay into the plan over the sixty (60) months period would not be uniform. From April 1989 through September 1989, payments would be only $39.00 a month. From October 1989 through May 1990, payments would be $62.00 per month. From June 1990 through March 1994, payments would be $1,002.00 per month. The reason given for the schedule of payments is that additional funds are available in May 1990 when one of the debtors' children finishes his college education.

### Law

(A) *Objection of Internal Revenue Service.* With the two modifications to the debtors' initial plan, the only remaining objection of the Internal Revenue Service to be determined by the Court is its position that, pursuant to 11 U.S.C. § 1322(a)(3), it is entitled to equal treatment with other secured claims under the plan. 11 U.S.C. § 1322(a)(3) states as follows:

The plan shall—(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

Paragraph 1 of the second amended Chapter 13 plan of the debtors provides as follows:

1. The Debtors will continue to make their regular monthly payments directly to the following creditors on the indicated secured obligations:

| | | |
|---|---|---|
| Coreast Savings Bank | First Mortgage on Residence | $644.00 per month |
| Signet Bank (Equity Line) | Second Mortgage on Residence | $498.00 per month |
| Coreast Savings Bank | Personal Note Secured by 1979 Datsun and 1979 Chevrolet | $136.00 per month |

■ With the exception of paragraph 1 of the second amended plan quoted above, the debtors do not propose the treatment of any other secured creditors in their plan. The debtors in their memorandum in support of confirmation of their plan acknowledge that Internal Revenue Service has a claim of $19,562.65 which is secured. Although it was not made clear at the hearing on confirmation, it appears that the secured status of Internal Revenue Service arises as a result of a filing of a Federal tax lien with the Clerk of the Circuit Court of Roanoke County, Virginia.

It appears that the debtors have attempted to classify secured claims for payment in their second amended Chapter 13 plan. However, Internal Revenue Service has not been classified as to the secured portion of its debt. 11 U.S.C. § 1325(a)(5) sets forth the factors for confirmation of a plan involving secured claims. Under that provision, the plan can be confirmed with respect to each allowed secured claim provided for by the plan if:

(A) the holder of such claim has accepted the plan; (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder....

It is clear that Internal Revenue Service has not accepted the second amended Chapter 13 plan. It is also clear that the content of the plan does not deal with the secured portion of the Internal Revenue Service claim. The debtor argues that the Internal Revenue Service claim will be paid pursuant to 11 U.S.C. § 507 which is the provision of the Bankruptcy Code which requires payment of priority claims. However, the only portion of section 507 of the Code which would be relevant to the claim of Internal Revenue Service is 11 U.S.C. § 507(a)(7) which provides for payment of "allowed unsecured claims of governmental units." Since a portion of the Internal Revenue Service claim is apparently secured, 11 U.S.C. § 507(a)(7) would not apply to the secured portion of the claim. Until the Chapter 13 plan proposes treatment of the secured portion of the Internal Revenue Service claim, it cannot be considered for confirmation.

■ (B) *The classification of unsecured claims.* The debtors wish to classify the educational loans for their children and pay them separately from the remaining unsecured claims. The debtors offered no evidence at the confirmation hearing as to their reasons for requesting the separate classification of the educational loans. However, counsel for the debtors argued that the children of the debtors are comakers of the educational loans which have been separately classified and that the debtors desire to protect their children from the claims of these creditors by pay-

ing as much to the creditors as is possible. There was no evidence offered of an agreement between the debtors and the educational lenders that the proposed plan payments would result in deferral of legal action against the children for collection of the balance owed.

11 U.S.C. § 1322(b)(1) states as follows: Subject to subsections (a) and (c) of this section, the plan may—(1) designate a class or classes of unsecured claims, as provided in sections 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims....

The second phrase of the Code section quoted above was added by the 1984 amendments to the Bankruptcy Code and specifically permits a debtor to separately classify and differently treat a consumer debt if an individual is liable on such debt with the debtor. The burden of establishing the fairness of a discriminatory classification of an unsecured debt is on the debtor. *In re Cook*, 26 B.R. 187, 190 (Bankr.N.M.1982).

A number of courts have established factors for use by the bankruptcy courts in determining whether a classification is unfairly discriminatory. This Court finds that the test set forth by *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988), should be adopted for use by this Court. That test states, "A discrimination is 'fair,' and therefore permissible, to the extent, and only to the extent, that it rationally furthers an articulated, legitimate interest of the debtor." *Id.* at 984. The test quoted above is applied in the context of 11 U.S.C. 1325(a)(3) which permits the court to confirm a plan if the plan has been proposed in good faith.

In the case at bar, the debtors propose to pay 14% of the educational loans and approximately 5% of the remaining unsecured claims. The only legitimate interest of the debtors articulated is the argument of their counsel that the classification will protect their children from the claims of the educational lenders until they finish their college education. However, there is no evidence that a 14% payment will further the stated reason of the debtors. In short, there is no guarantee that a 14% payment will induce the educational lenders to refrain from legal action against the children. Further, this Court is not convinced that protection of one's children from claims of creditors who funded their higher education is the type of legitimate interest of the debtor that Congress intended to protect when it amended section 1322(b)(1) in 1984.

The debtors have cited *In re Perkins*, 55 B.R. 422 (Bankr.N.D.Okl.1985) in support of their position that discrimination in the case at bar should be permitted. However, in *Perkins*, the debtor was proposing to pay 100% to one unsecured creditor and 22% to the remaining unsecured creditors. *Id.* at 424. In *Perkins*, the court found "the debtors could not carry out this plan without such discrimination because they may attempt to repay Associates outside of the plan to protect their son from creditor pressure and thus lessen the plan's likelihood for success." *Id.* at 426. The facts of the *Perkins* case are distinguishable in that in *Perkins* the debtor was proposing to pay the unsecured creditor 100%. In the case at bar, the debtors are proposing to pay only 14% to the educational lenders and there is no guarantee that the educational lenders will refrain from taking action against the comakers in this case.

The most important part of the *Lawson* test is that discrimination must be based upon a "legitimate interest of the debtor." As pointed out in *Lawson:*

At the same time, it could hardly be contended that, under Section 1322(b)(1), a Chapter 13 debtor may choose to advance *any* personal interest by discriminating in the treatment of unsecured creditors; that could lead to approval of discrimination on purely personal grounds, like family relationship and friendship. The examples given by Mr. Rice in his testimony to Congress were ones in which the debtor's objective inter-

ests, either in bankruptcy—in completing the plan and in obtaining a fresh start—or in maintaining a decent quality of life, might reasonably be advanced.

*Lawson,* at 984.

This Court holds that the desire of parents to protect their children from the claims of creditors for debts incurred solely for the benefit of the comaker children does not, by itself, constitute a legitimate interest of the debtor which should be protected by permitting discriminatory treatment under 11 U.S.C. § 1322(b)(1). Accordingly, the plan as currently proposed cannot be confirmed under 11 U.S.C. § 1325.

An appropriate order will be entered implementing this memorandum opinion.