**In re Dan T. SAUNDERS and Edith Giles Saunders, Debtors.**

**Bankruptcy No. 90–00839.**

United States Bankruptcy Court, W.D. Virginia, Danville Division.

Jan. 8, 1991.

appeal pursuant to 28 U.S.C. § 158(a).

## MEMORANDUM OPINION

WILLIAM E. ANDERSON, Chief Judge.

In this proceeding to determine the validity of the trustee's objections to claims, the issues before the court are:

1. whether a secured creditor is entitled to be paid attorneys' fees in a Chapter 13 plan;

2. whether an unsecured creditor may add attorneys' fees to its claim for payment in a Chapter 13 plan;

3. how the amount of attorneys' fees is to be established;

4. whether an undersecured or unsecured creditor may add attorneys' fees to its claim for payment in a Chapter 13 plan in lieu of proceeding against co-signers; and

5. whether proofs of claim are defective if contractual attorneys' fees are requested but copies of the parts of the notes and security agreements that contain the attorneys' fee provisions are not filed.

### FACTS

Dan T. and Edith Giles Saunders filed a joint Chapter 13 bankruptcy petition on June 11, 1990. Their Chapter 13 plan was confirmed on October 3, 1990. American National Bank & Trust Co. (American National) filed three proofs of claim that included attorneys' fees in the amount of 25% of each claim. Two of the claims were for the balances due on loans used to purchase motor vehicles. The third related to the financing of a mobile home, secured by real estate, and used by the debtors as their principal residence. All of the notes and security agreements were co-signed by the parents of Mrs. Saunders.

The Chapter 13 plan provides for the trustee to pay American National the fair market value of the motor vehicles as a secured claim and to pay the balance owed as an unsecured claim in order to cover the obligation of the co-signors. The plan provides for the debtors to make direct monthly payments on the mobile home, with the small amount of pre-petition arrearage to be cured by payments from the trustee.

Lewis E. Goodman, Jr., for Debtors.

Luis A. Abreu, Danville, Va., for American Nat. Bank & Trust Co.

Laurence P. Morin, Lynchburg, Va., trustee.

The debtors object to the portion of each claim that constitutes attorneys' fees, which together total $8,736.27. The trustee asserts, and American National does not dispute, that there is no equity in any of the collateral, thus each of the claims is undersecured at least to the extent of the amount claimed for attorneys' fees.

At the request of the court, counsel for American National submitted an itemized statement of services rendered in connection with this matter which shows actual total attorneys' fees and costs of $748.50. None of the attorneys' fees were incurred before the debtors filed their bankruptcy petition.

## DISCUSSION

### 1. Secured Claims.

■ The only section of the Bankruptcy Code that expressly authorizes any creditor to be paid attorneys' fees as part of a claim is 11 U.S.C. § 506(b), which provides that:

(b) To the extent that an allowed secured claim is secured by property the value of which, ..., is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The literal language of section 506(b) entitles a secured creditor to recover reasonable attorneys' fees as part of a claim to the extent such fees are authorized by the agreement creating the claim, if the value of the security exceeds the amount of the claim plus the attorneys' fees.

### 2. Unsecured and Undersecured Claims.

■ This court believes that for the purpose of deciding the issue before it, there is no difference between an unsecured claim of a creditor without security and the unsecured portion of a claim where the value of the security is less than the amount of the

debt. *See In re Sakowitz, Inc.,* 110 B.R. 268, 269 (Bkrtcy.S.D.Tex.1989).

There is very little direct authority regarding whether a creditor can recover contractual attorneys' fees on an unsecured or undersecured claim. There also is apparently nothing in the legislative history of the relevant provisions of the Bankruptcy Code which sheds any light on the question. *See In re United Merchants & Manufacturers,* 674 F.2d 134, 138 (2d Cir.1982).

11 U.S.C. § 506(a)[1], provides that an undersecured creditor has an unsecured claim for the deficiency. Section 506(b), which expressly allows contractually authorized attorneys' fees for secured claims, immediately follows section 506(a). If attorneys' fees were allowable on the unsecured portion of a debt, there would be no need for subsection (b). If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so. But it did not.

Cases holding that undersecured creditors cannot recover contractual attorneys' fees include *In re Sakowitz, Inc.,* 110 B.R. 268, (Bkrtcy.S.D.Tex.1989); *In re Canaveral Seafoods, Inc.,* 79 B.R. 57, 58 (Bkrtcy. M.D.Fla.1987); *In re Mobley,* 47 B.R. 62, 63 (Bkrtcy.N.D.Ga.1985); and *In re Woerner,* 19 B.R. 708, 713 (Bkrtcy.D.Kan.1982). *See also United Savings Association of Texas v. Timbers of Inwood Forest Associates, Inc.,* 484 U.S. 365, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988) ("Since [section 506(b) ] permits postpetition interest to be paid only out of the "security cushion," the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest.")

A number of cases have decided this question differently, holding that an undersecured or unsecured creditor can assert an unsecured claim for contractual attorneys' fees if the agreement under which the claim arose provides for the recovery of

---

**1.** An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. 11 U.S.C. § 506(a).

such fees. *See, e.g., Liberty Nat. Bank & Trust Co. v. George,* 70 B.R. 312, 316–17 (W.D.Ky.1987) (allowing undersecured creditor to recover attorneys' fees) and *In re Ladycliff College,* 46 B.R. 141, 143 (Bkrtcy.S.D.N.Y.1985) (allowing undersecured creditor to recover attorneys' fees but not allowing postpetition interest). These cases usually cite *In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134 (2d Cir.1982), as authority.

*United Merchants* was decided under the Bankruptcy Act, although the court discussed section 506(b) of the Bankruptcy Code, which had been enacted by the time the opinion was written. The court held that section 506(b) merely codified the pre-1978 right of oversecured creditors to recover contractual attorneys' fees and was not intended to change the pre-Code decisions allowing undersecured and oversecured creditors to recover contractual attorneys' fees. Based on its interpretation of sections 506(a) and (b) when those provisions are read together, this court does not believe that the *United Merchants* result was intended by Congress. In general, this court agrees with the reasoning of *In re Sakowitz,* 110 B.R. 268 (Bkrtcy.S.D.Tex. 1989), which discusses and analyzes the *United Merchants* line of cases in reaching the same conclusion that this court reaches.

### 3. *How Is the Amount of Attorney Fees to be Determined?*

■ Attorneys' fees, when recoverable by a fully secured creditor, must be provided for in a valid agreement and must be reasonable. 11 U.S.C. § 506(b). The validity of the contractual provision authorizing the recovery of the fees and reasonableness of the fees is determined using a federal standard. While this conclusion is supported by numerous cases from many jurisdictions [2], the Fourth Circuit Court of Appeals' decision in *Unsecured Creditors' Committee v. Walter E. Heller & Company Southeast, Inc.,* 768 F.2d 580 (4th Cir. 1985) controls here and so provides.

In *Walter E. Heller,* the court held that an oversecured creditor could enforce attorneys' fee agreements under section 506(b) notwithstanding contrary state law. The court carefully reviewed the legislative history of section 506(b) and determined that when Congress enacted section 506(b) of the Bankruptcy Code in 1978, it intended to change the then existing requirement that the recovery of attorneys' fees be determined by state law. Interestingly, *Walter E. Heller* involved a situation where a state law notice requirement would defeat a claim for attorneys' fees. The court allowed the fees anyway, stating that Congress intended to abrogate the pre-existing requirement that attorneys' fee agreements were enforceable only in accordance with state law when it enacted section 506(b).

Although *Walter E. Heller* involved a situation where state law would defeat a contractual claim for attorneys' fees, there is nothing in the opinion that indicates that if the situation were reversed, that is if state law allowed the recovery of the attorneys' fees, that state law would control thereby requiring the bankruptcy court to award them.

There is contrary law in the Western District of Virginia, but it predates the Fourth Circuit's decision in *Walter E. Heller.* In three cases decided between 1979 and 1982, the district court held that the allowance of attorneys' fees in connection with a secured claim in a bankruptcy proceeding was to be determined in accordance with state law. In *In re Crafty Fox, Ltd.,* 475 F.Supp. 634 (W.D.Va.1979), the court held that because a stipulated attorneys' fee in a note was valid and enforceable under Virginia law, it was therefore required to be awarded by the bankruptcy court. Neither of the cases cited by the court in support of its position were decided under the Bankruptcy Code, however.

**2.** See, e.g., *Matter of 268 Ltd.,* 789 F.2d 674, 675 (9th Cir.1986); *In re Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir.1986) and other cases cited at 3 *Collier on Bankruptcy,* § 506.05, at fn. 21 p. 506–48 (1990). After reviewing the legislative history, the 1990 edition of *Collier on Bankruptcy* states that the better view is that the validity of provisions allowing attorneys' fees should be determined by federal law (*i.e.,* section 506(b)). 3 *Collier on Bankruptcy* § 506.05, p. 506–51.

The district court reaffirmed and expanded its *Crafty Fox* holding in *In re Virginia Foundry Co., Inc.*, 9 B.R. 493, 497 (W.D.Va.1981) where the court held as follows:

> When a secured agreement provides for stipulated interest, fees, costs or charges, such are to be determined in accordance with state law. However, even if such interest, fees, costs or charges are not allowable under state law, they may be allowed as a matter of federal law by the bankruptcy court.

Thus the court adopted the anomalous position that either federal or state law may apply to determine the validity of the contractual provision allowing the fees, depending upon which would allow recovery. A year later, in *In re Triangle Equipment Co., Inc.*, 26 B.R. 175 (1982), the district court held that the reasonableness, in addition to the validity, of an award of attorneys' fees pursuant to section 506(b) must be determined by state law standards, not federal.

Interestingly, in *Walter E. Heller*, the Fourth Circuit Court of Appeals cites *Virginia Foundry* as authority for its holding that attorneys' fee agreements are enforceable under section 506(b) notwithstanding contrary state law. Unlike the district court, however, the Fourth Circuit did not distinguish between cases where state law would allow the recovery of attorneys' fees and cases where it would not. None of the other decisions cited by the Fourth Circuit in support of its holding in *Walter E. Heller* are consistent with that part of the *Virginia Foundry* holding which makes either state law or federal law controlling depending on which would allow the attorneys' fees, and several expressly contradict it by holding that federal law alone determines entitlement to attorneys' fees for purposes of section 506(b). *See, e.g., Longwell v. Banco Mort. Co.*, 38 B.R. 709, 711 (N.D. Ohio 1984).

*In re Jelco Construction*, 108 B.R. 113 (Bkrtcy.W.D.Va.1989), has also been cited in support of determining the validity of attorneys' fees for purposes of section 506(b) under state law. Although the reasoning in *Jelco* is arguably in conflict with this opinion, because *Jelco* concerned the reasonableness of a trustee's commission under a deed of trust and did not involve attorneys' fees, it is inapposite.

The validity under state law of the contractual provision authorizing recovery of attorneys' fees is not irrelevant, however. State law and custom would certainly be a relevant consideration in determining questions of validity and of reasonableness. *See, e.g., In re Hart*, 80 B.R. 107, 109 (Bkrtcy.E.D.Tenn.1987) (The parties' agreement and state law serve only to set an upper limit on the amount that is a reasonable fee.)

In contrast to the validity issue, courts have been far more uniform in holding that they have inherent power to determine the reasonableness of the amount of any attorneys' fees to be allowed under section 506(b) and that reasonableness is to be determined in accordance with federal standards. *See* 3 *Collier on Bankruptcy* § 506.05, p. 506–51 (1990) and cases cited therein. Although, as noted above, the district court in *In re Triangle Equipment Co., Inc.*, 26 B.R. 175 (W.D.Va.1982), held that the reasonableness of the amount of attorneys' fees was also to be determined in accordance with state law, the Fourth Circuit's reasoning in *Walter E. Heller* undermines that holding.

■ The party seeking allowance of attorneys' fees bears the burden of establishing reasonableness and generally a detailed description of the services rendered will be required. In determining the reasonableness of fees, the twelve-factor test adopted by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978) and made applicable to bankruptcy proceedings in *Harman v. Levin*, 772 F.2d 1150, 1152 n. 1 (4th Cir.1985) would be applicable.[3]

4. *The Effect of Cosigners on the Right to Recover Attorneys' Fees.*

■ In cases involving consumer debt, 11 U.S.C. § 1301(a) stays actions by a credi-

---

**3.** *But see, In re Great Sweats of Virginia, Inc.*, 109 B.R. 696 (E.D.Va.1989) and *In re Great Sweats of Virginia, Inc.*, 113 B.R. 240 (Bkrtcy. E.D.Va.1990).

tor to collect the debt from a codebtor. 11 U.S.C. § 1301(c)(2) provides that a creditor may obtain relief from the codebtor stay once a Chapter 13 plan is filed if the plan does not propose to pay the creditor's claim in full. Based on section 1301(c)(2), some courts have allowed creditors to seek postpetition interest from codebtors to the extent that the plan does not allow for it, reasoning that a creditor is not being paid in full if it does not receive postpetition interest. As a result, in order to protect the cosigner, cosigned debts are often separately classified and paid in full with postpetition interest. See 11 U.S.C. § 1322(b)(1). By analogy, American National argues in this case that it is entitled to recover contractual attorneys' fees from the non-debtor cosigners of the debtors' obligations.

This court disagrees with American National. While there are decisions holding that when a Chapter 13 plan that does not propose to pay postpetition interest, a creditor is entitled to obtain such interest from cosigners and can obtain relief from the automatic stay to do so, this court has been unable to find any decisions allowing a creditor to recover contractual attorneys' fees from the cosigner when the plan proposes to pay the full amount of the creditors claim including postpetition interest. Nor has American National cited any such decisions.

This court does not agree with the rationale underlying those few reported decisions allowing undersecured or unsecured creditors to receive postpetition interest when there is a cosigner.[4] 11 U.S.C. § 1301(c) provides that:

... the court shall grant relief from the stay provided by subsection (a) of this

section with respect to a creditor, to the extent that—

(1) ...

(2) the plan filed by the debtor proposes not to pay [the creditor's] claim; or

...

The term "claim" as used in this provision arguably does not include postpetition interest, see 11 U.S.C. § 502(b)(2), and is not normally considered to include attorneys' fees, costs or charges provided for under the agreement under which the claim arises. If the term "claim" was intended to include postpetition interest, contractual attorneys' fees, costs, and charges, there would be no need for a provision like 11 U.S.C. § 506(b) which expressly authorizes secured creditors to obtain such items in addition to the amount of the claim.

For these reasons, this court holds that when a Chapter 13 plan proposes to pay an undersecured or unsecured creditor the full amount of such creditor's claim, the creditor is not entitled to recover postpetition interest, attorneys' fees, costs or other charges from the codebtor, even if such items are provided for in the agreement under which the claim arises.

### 5. Adequacy of the Proofs of Claim.

The trustee also questions the proofs of claim filed by American National because copies of the parts of the notes and security agreements which contain the attorneys' fee provisions were not filed. In view of its resolution of the other issues, the court makes no ruling on the proofs of claim issue.

### CONCLUSION

Pursuant to 11 U.S.C. § 506(b), a secured creditor is entitled to be paid attorneys' fees in a Chapter 13 plan, if the value of the security exceeds the amount of the claim plus the attorneys' fees, and if the

---

**4.** Cases allowing a creditor to recover postpetition interest from a codebtor cite legislative history in support of the holding. *See, e.g., In re DiDomizio,* 11 B.R. 357, 358 (Bkrtcy.D.Conn. 1981) ("If the debtor proposes not to pay a portion of the debt under his chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim, including postpetition in-

terests, costs and attorney's fees, if the contract so provides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 122 (1977)), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6083.

It is not clear to this court that the language in the legislative history that is usually cited was intended to apply to unsecured and undersecured creditors as well as to fully secured creditors.

fees are authorized by the agreement creating the claim. The validity of a contractual provision authorizing a secured creditor to recover attorneys' fees and the reasonableness of the fees is determined under federal law.

An undersecured or unsecured creditor cannot recover contractual attorneys' fees for work performed postpetition. When a Chapter 13 plan proposes to pay an undersecured or unsecured creditor the principal amount of such creditor's claim in full, the creditor is not entitled to recover postpetition interest, attorneys' fees, costs or other charges from the codebtor, even when such items are provided for in the agreement under which the claim arises.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion it is

ORDERED and ADJUDGED

that American National Bank & Trust Co. is not entitled to recover attorneys' fees as part of its Claims numbered 4, 5 and 6 filed in this proceeding.