**In re Rebecca Lynn JANSSEN, Debtor.**

**Bankruptcy No. 98–00141–C.**

United States Bankruptcy Court,
N.D. Iowa.

May 7, 1998.

Steven Klesner, Iowa City, IA, for Debtor.

Carol Dunbar, Waterloo, IA, Chapter 13 Trustee.

## ORDER

PAUL J. KILBURG, Bankruptcy Judge.

On April 23, 1998, the above-captioned matter came on for hearing pursuant to assignment. Present at the hearing were Debtor Rebecca Janssen, Debtor's attorney, Steven Klesner, and Trustee Carol Dunbar. The issue for the Court to resolve is whether Debtor's separate classification of co-signed, unsecured claims unfairly discriminates against the class of general unsecured claims. After considering the parties' briefs and the presentation of evidence, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF THE CASE

Debtor Rebecca Lynn Janssen filed a voluntary Chapter 13 bankruptcy petition on January 16, 1998. On March 24, 1998, the Court held a confirmation hearing on Debtor's Chapter 13 Plan. At that time, the Court raised the issue whether Debtor's separate classification of co-signed, unsecured claims is permitted under § 1322. Debtor asserts that 11 U.S.C. § 1322(b)(1) expressly allows the separate classification of unsecured claims where co-signers exist. Trustee states that for the requirements of § 1322(b)(1) to be satisfied, the separately classified co-signed debts must be consumer debts and all co-signed, unsecured debts must be treated similarly. If such requirements are met, then this Plan should be confirmed.

### FINDINGS OF FACT

Debtor has proposed a sixty-month Plan in which she will pay $570 .00 monthly to Trustee beginning February 13, 1998. Debtor is current on her payments under the proposed Plan. The total debt and administrative expenses provided under the Plan are as follows:

1. Attorney fees $ 800.00
2. Secured claims $10,926.18
3. Separate class of co-signed unsecured claims (calculated to include a 12% interest rate)

| | | | |
|---|---|---|---|
| a. | Citizens State Bank | $2,700.00 @ 12% = | $ 3,977.18 |
| b. | GMAC | $7,438.00 @ 12% = | $10,956.39 |
| c. | Pat McGrath Chevyland | $1,000.00 @ 12% = | $ 1,473.03 |
| | **Total** | | **$16,406.60** |
| 4. | All other unsecured claims | | $ 2,958.13 |
| 5. | Trustee's fees | | $ 3,109.09 |
| | **Total payments to the Plan** | | **$34,200.00** |

The claims at issue are the unsecured claims of Citizens State Bank, General Motors Acceptance Corporation (GMAC), and Pat McGrath Chevyland. Citizens State Bank's claim was incurred for household expenses, schooling, and child care expenses. GMAC's claim represents the unsecured portion of Debtor's 1995 Chevy S10 pickup. Both Citizens State Bank's claim and GMAC's claim were co-signed by Debtor's father, Norman Christiansen.

Pat McGrath Chevyland's claim was incurred for the debt arising from the down payment on the same truck. Debtor claims that Pat McGrath Chevyland can recover from herself, her father, and her former boyfriend, Kenneth Beck, on the basis of a default judgment obtained by Pat McGrath Chevyland after the automatic stay was in effect. Debtor testified that Mr. Beck did not co-sign the debt to Pat McGrath Chevyland. Mr. Beck's involvement was limited to writing a check to Pat McGrath Chevyland for $1,000.00. This amount constituted half of Debtor's $2,000.00 down payment on the truck. Mr. Beck, however, stopped payment on the check due to a disagreement between himself and Debtor.

Under the Plan, the amount being paid to general unsecured creditors is $2,958.13 and the total amount of general unsecured claims is $23,213.00. The Plan provides for the separate class of co-signed, unsecured claims to be repaid in full plus interest while the general class of unsecured claims will receive approximately a 13% dividend. Without the separate classification, the amount available for unsecured creditors would be $19,364.73 ($2,958.13 + $16,406.60), the total amount of unsecured claims would be $34,351.00 ($23,213.00 + $11,138.00), and all unsecured creditors would receive approximately a 56% dividend.

## CONCLUSIONS OF LAW

Claims classification in a Chapter 13 plan is governed by 11 U.S.C. § 1322(b)(1), which states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; *however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.*

11 U.S.C. § 1322(b)(1) (1993) (emphasis added).

Section 1322(b)(1) serves as an "incentive to debtors to reorganize rather than liquidate." *In re Thompson*, 191 B.R. 967, 969 (Bankr.S.D.Ga.1996). *Cf.* Lynn M. LoPucki, *Common Sense Consumer Bankruptcy*, 71 Am. Bankr.L.J. 461, 475 (1997) ("Congress deliberately established economic incentives to file under Chapter 13."). The reasons for Congress' preference of Chapter 13 include: (1) the historically meager return to unsecured creditors in Chapter 7; (2) the preservation of the fresh start; and (3) Chapter 13's emphasis on repayment of unsecured debt, rather than discharge. *See Thompson*, 191 B.R. at 974 n. 9.

Section 1322(b)(1) was amended in 1984 to add the co-debtor provision. Courts have interpreted the amendment to sanction "preferential treatment for claims on which a co-signor is liable with the debtor." *In re Cheak*, 171 B.R. 55, 57 (Bankr.S.D.Ill.1994) (citing *In re Dornon*, 103 B.R. 61, 64 (Bankr. N.D.N.Y.1989) and *In re Davis*, 101 B.R. 505, 506 (Bankr.S.D.Ohio 1989)). While there is no official legislative history regarding the 1984 amendment to § 1322(b)(1), the Senate

Report is helpful in understanding the purpose behind the amendment:

> Although there may be no theoretical differences between codebtor claims and others, there are important practical differences. Often, the codebtor will be a relative or friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay the debt anyway, it is important that this fact be considered in determining the feasibility of the plan.

S. Rep. No. 65, at 17 (1983).

■ Underlying the assumption that a debtor will feel compelled to fully pay the claim on which a co-signor is liable with the debtor (hereinafter the "co-debt") is the additional assumption that the co-debt was incurred for the benefit of the debtor rather than for the benefit of the friend or relative. *See In re Gonzales,* 172 B.R. 320, 329 (E.D.Wash.1994). "However, the same is not true where the debtor extends his or her credit to help the co-signer." *Id.* In such a case, the debtor will not feel compelled to pay the co-debt because no help was given to the debtor. *See id.* Accordingly, § 1322(b)(1) applies only to co-signed debt acquired for the benefit of the debtor. *See id.* at 329–30. Here, the co-debt was incurred for the benefit of Debtor.

### CONSUMER DEBT

■ The threshold issue is whether the debts owed to Citizens State Bank, GMAC, and Pat McGrath Chevyland are consumer debts. *See In re Whitelock,* 122 B.R. 582, 586 (Bankr.D.Utah 1990). Consumer debt is defined in § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8) (1993). Debtor sought the loans from Pat McGrath Chevyland and GMAC to purchase the truck. Debtor uses the truck for transportation purposes to and from work. At no time did Debtor operate a business with the truck. Debtor sought the loan from Citizens State Bank to pay for household expenses, schooling, and child care expenses. Debtor testified that the loan from Citizens State Bank was not specifically a student loan. The Court is satisfied that the debt owed to

Citizens State Bank, GMAC, and Pat McGrath Chevyland are consumer debts.

### PAT McGRATH CHEVYLAND'S CLAIM

■ Debtor testified that Pat McGrath Chevyland filed suit after the automatic stay was in effect and obtained a default judgment against Debtor, Debtor's father, and Mr. Beck for the $1,000.00 debt. This Court has held that actions taken in violation of the automatic stay are void. *See In re Prine,* No. 97–01232–D, slip op. at 3 (Bankr. N.D.Iowa Sept. 4, 1997); *In re Nichols,* No. L88–00954W, slip op. at 3 (Bankr.N.D.Iowa Sept. 28, 1994) (quoting *Ellis v. Consol. Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir. 1990)). Accordingly, Pat McGrath Chevyland's default judgment against Debtor, Debtor's father, and Mr.Beck violates the automatic stay and is void.

Debtor testified that Mr. Beck did not sign any documents which would make him a true co-signor on the debt. Mr. Beck merely wrote a check to Pat McGrath Chevyland, on which he later stopped payment due to a disagreement between himself and Debtor. Because Mr. Beck did not co-sign the debt, Mr. Beck has no liability on Pat McGrath Chevyland's claim.

Debtor's Plan treats Pat McGrath Chevyland as having a claim that should be included in the separate class with Citizens State Bank's and GMAC's claims because her father co-signed the note. However, the record does not supply any evidence of that claim. The language of GMAC's Proof of Claim establishes that Pat McGrath Chevyland's claim was fully assigned to GMAC. Pat McGrath Chevyland did not file a proof of claim separate from GMAC's claim.

The Court finds Debtor's Schedules and Plan, which provide for Pat McGrath Chevyland's claim as unsecured in the amount of $1,000.00, are contradictory to the evidence and GMAC's proof of claim. Debtor's Schedules list GMAC's claim as $16,963.00 and Pat McGrath Chevyland's claim as $1,000.00. GMAC's Proof of Claim, however, lists its claim as $18,519.06, which is sufficiently broad to include Pat McGrath Chevyland's claim as well as interest. The Court finds that Pat McGrath Chevyland's claim was ful-

ly assigned to GMAC. As such, Debtor need not provide for any alleged debt to Pat McGrath Chevyland in her Plan.

### UNFAIR DISCRIMINATION

Courts disagree on whether § 1322(b)(1)'s "however" clause excepts co-signed debts from the unfair discrimination test. *Compare In re Battista*, 180 B.R. 355, 357 (Bankr.D.N.H.1995) (holding that "the unfair discrimination standard applies to plans that separately classify cosigned consumer debts"); *Gonzales*, 172 B.R. at 328 (applying the unfair discrimination standard to separately classified co-signed consumer debts); *and In re Easley*, 72 B.R. 948, 955–56 (Bankr.M.D.Tenn.1987) (same); *with In re Riggel*, 142 B.R. 199, 202 (Bankr.S.D.Ohio 1992) (excepting co-signed consumer debts from the unfair discrimination test); *and Dornon*, 103 B.R. at 64 (same). The Court finds the legal reasoning of *Battista*, *Gonzales*, and *Easley* compelling and concludes that the unfair discrimination standard applies to Chapter 13 plans that separately classify co-signed consumer debts. *Accord In re Martin*, 189 B.R. 619, 628 (Bankr. E.D.Va.1995) ("Permitting a debtor to arbitrarily differentiate between creditors based upon the co-signed status of a debt—without any further justification—is an invitation to abuse."). This Court concludes that if Congress had intended for the unfair discrimination standard not to apply, it could have easily and clearly said so. *See Battista*, 180 B.R. at 357.

Accordingly, any proposed discrimination in favor of co-signed claims must be fair. *See Cheak*, 171 B.R. at 57. For example, a debtor cannot treat one unsecured, co-signed, consumer claim differently than another unsecured, co-signed, consumer claim. *Accord In re Young*, 102 B.R. 1022, 1023 (Bankr.W.D.Mo.1989). To hold otherwise is to compromise "the entire structure and concept of [fair] treatment." *See id.*

Debtor bears the burden of "establishing the rationale and fairness of a discriminatory treatment of unsecured claims." *See Whitelock*, 122 B.R. at 588. The determination concerning the fairness of discriminatory treatment of unsecured claims must be made on a case-by-case basis. *See Cheak*, 171 B.R. at 58 (citing *In re Lawson*, 93 B.R. 979, 984 (Bankr.N.D.Ill.1988)). Many courts, for example, have approved the separate classification of claims "where the debtor showed the need for a continuing relationship with a creditor postbankruptcy." *Thompson*, 191 B.R. at 969–70. Such a showing has been made for the following types of claims:

(a) landlords;

(b) attorneys;

(c) doctors;

(d) trade creditors; and

(e) banks extending credit necessary for the continued operation of a Chapter 13 debtor's business.

*In re Coonce*, 213 B.R. 344, 346 (Bankr. S.D.Ill.1997). Additional cases where the debtor successfully showed the need for a continuing relationship with a creditor post-bankruptcy are: *In re Ross*, 161 B.R. 36, 38 (Bankr.C.D.Ill.1993) (allowing debtor's favored treatment of his debt co-signed by his employer because of the risk that debtor would lose his job if the employer was forced to pay the debt); *In re Todd*, 65 B.R. 249, 253 (Bankr.N.D.Ill.1986) (allowing police officer's favored treatment of his debt co-signed by his partner because of the need to maintain confidence and harmony with his partner who helped him with daily, dangerous police work); *In re Ratledge*, 31 B.R. 897, 899–900 (Bankr.E.D.Tenn.1983) (permitting the debtor's favored treatment of medical bills and retail store bills).

Examples of cases where the debtor was unable to show the need for a continuing relationship with a creditor post-bankruptcy are: *In re Wolff*, 22 B.R. 510, 511–12 (9th Cir. BAP 1982) (disallowing the debtor's favored treatment of insurer and business supplier); *In re Furlow*, 70 B.R. 973, 978 (Bankr.E.D.Pa.1987) (holding that the debtor failed to provide a reasonable basis for treating her educational loan more favorably than her other unsecured debts); *In re Harris*, 62 B.R. 391, 397 (Bankr.E.D.Mich.1986) (disallowing discrimination against business debts in favor of consumer debts); *In re Dziedzic*, 9 B.R. 424, 427 (Bankr.S.D.Tex.1981) (disallowing policeman from favoring his credit

union despite allegations of potential harm to his employment and social relationships for failure to do so).

■ Courts have developed the following four-factor test to determine whether discrimination in favor of a separate class of unsecured claims is fair:

1) The discrimination must have a reasonable basis;

2) The debtor cannot carry out a plan without such discrimination;

3) The discrimination is proposed in good faith; and

4) The degree of discrimination is directly related to the basis or rationale for the discrimination.

*Whitelock,* 122 B.R. at 589; *see also Todd,* 65 B.R. at 253 (applying a similar four-factor test to determine whether the discrimination was fair); *In re Perkins,* 55 B.R. 422, 425–26 (Bankr.N.D.Okla.1985) (same); *but see Thompson,* 191 B.R. at 971 (finding the four-part test to be of little help because it amounts to "no more than a test for reasonableness").

■ The Court finds that Debtor's discrimination in favor of Citizens State Bank's claim and GMAC's claim has a reasonable basis for separate classification in that Debtor strongly desires a continuing relationship with her father post-bankruptcy. Debtor testified to the following:

1) she filed Chapter 13 rather than Chapter 7 because she feels that her creditors should get paid;

2) she believes it to be fair and necessary to pay the separate class of co-signed, unsecured, consumer claims in full; and

3) she did not intend to harm her other creditors by separately classifying her co-signed debts.

Based on Debtor's testimony, the Court is satisfied that Debtor could not carry out her Plan without discriminating in favor of Citizens State Bank and GMAC because she may attempt to repay these creditors outside of the Plan to protect her father from creditor pressure, which would lessen the Plan's likelihood for success. *See Perkins,* 55 B.R. at 426 (applying similar reasoning).

The Court is also satisfied that Debtor's discrimination in favor of Citizens State Bank and GMAC has been proposed in good faith and is directly related to the basis or rationale for the discrimination. Accordingly, Debtor's separate classification of Citizens State Bank's claim and GMAC's claim satisfies the unfair discrimination test.

### SECTION 1325 REQUIREMENTS

■ The requirements for confirmation of a Chapter 13 plan are contained in § 1325. *See* 11 U.S.C. § 1325 (1993). "Courts which hold that unfair discrimination applies to co-debtor classifications often find unfair discrimination by reference to a failure to satisfy the other confirmation requirements of [§ ] 1325." *Thompson,* 191 B.R. at 971. One requirement of § 1325 is that the amount to be paid to each unsecured creditor under the plan cannot be less than the amount they would receive in a Chapter 7 liquidation. *See* 11 U.S.C. § 1325(a)(4). Therefore, "[i]f the result of a debtor's classification scheme is that the debtor is unable ... to provide all unsecured creditors with at least as much as they would have received under Chapter 7, the plan is not confirmable with the separate classification." *Thompson,* 191 B.R. at 972.

■ Here, unsecured creditors would receive approximately a 4.6% dividend using the following liquidation analysis:

| | |
|---|---|
| Total property of debtor | $14,825.98 |
| Property securing debt | -$ 9,525.00 |
| Exempt property | -$ 3,776.00 |
| Estimated funds available for Chapter 7 distribution | $ 1,524.98 |
| Unsecured debt (including Citizens State Bank and GMAC co-debts) | $33,351.00 |
| Percent of unsecured claims paid if Chapter 7 filed | 4.6% |

After eliminating Pat McGrath Chevyland's claim, the general unsecured creditors will receive approximately a 19% dividend [ ($1,473.03 + $2,958.13)/$23,213.00] under Debtor's Chapter 13 Plan. Therefore, general unsecured creditors are receiving more under Debtor's Chapter 13 Plan with the sepa-

rate classification than they would receive in a Chapter 7 liquidation.

■ Another relevant requirement under § 1325 is whether Debtor proposed the Plan in good faith. *See* 11 U.S.C. § 1325(a)(3). To satisfy this requirement, Debtor must "pursue the separate classification in a good faith effort to reorganize, and not simply as a means of preferring certain creditors at the expense of others." *Thompson*, 191 B.R. at 972. By enacting § 1322(b)(1), Congress wanted to "prevent a 'ripple effect' of bankruptcy filings by protecting co-signors which would be plunged into bankruptcy themselves if the debt were not paid by the debtor." *Id.* at 973; *see also Dornon*, 103 B.R. at 64. If the threat of this ripple effect is not present, the good faith of the debtor may be called into question. *See Thompson*, 191 B.R. at 973–74.

Debtor testified as to the liquidity of her father. Debtor's father is a 73–year old retired farmer and is not in good health. Debtor stated that although her father could pay both Citizens State Bank's claim and GMAC's claim, it would place him in a tight financial position. Based on Debtor's testimony, the Court is satisfied that Debtor separately classified Citizens State Bank's claim and GMAC's claim to prevent her father from financial hardship.

■ A debtors' good faith may also be questioned where the repayment plan proposes to pay the separately classified co-signed debt in full while paying nothing to the general unsecured creditors. *See id.* at 974. When this situation arises, the repayment plan is nothing more than a Chapter 7 liquidation accompanied by the debtor's reaffirmation of co-debtor claims. *See id.* Here, however, the general unsecured creditors will receive more under Debtor's Chapter 13 Plan with the separate classification than they would receive in a Chapter 7 liquidation, rendering the problem of a disguised Chapter 7 liquidation and reaffirmation inapplicable to this case.

### Post–Petition Interest

■ Chapter 13 plans that separately classify co-signed, unsecured, consumer claims may provide for payment in full as well as contractual post-petition interest. *See Austin*, 110 B.R. 430, 431 (Bankr. E.D.Mo.1990); *see also* 1 Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.62, at 4–137 (2d ed.1994). In a Chapter 13 case, a creditor "may pursue collection activity against a [co-debtor] who is not in bankruptcy, but only for that portion of the creditor's claim which is not paid through the Chapter 13 plan." *Austin*, 110 B.R. at 431; *see also* 11 U.S.C. § 1301 (1993). Some courts have held that under § 1301(c)(2), the co-debtor may be held liable to the creditor for post-petition, contractual interest which is not provided for in the debtor's Chapter 13 plan. *See Austin*, 110 B.R. at 431 (citing *In re DiDomizio*, 11 B.R. 357 (Bankr.D.Conn.1981) and *In re Henson*, 12 B.R. 82 (Bankr.S.D.Ohio 1981)). Unmatured post-petition interest, however, is normally not allowable as part of an unsecured claim. *See* Lundin, *supra* § 4.62, at 4–137.

This Court must respectfully disagree with those decisions allowing unsecured creditors to receive post-petition interest from a debtor when there is a co-signor. *Accord In re Saunders*, 130 B.R. 208, 213 (Bankr.W.D.Va. 1991). Section 1301(c)(2), which applies to co-debtors, provides:

> (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
>
> . . .
>
> (2) the plan filed by the debtor proposes not to pay such claim.

11 U.S.C. § 1301(c)(2). The term "claim" as used in this provision is not normally considered to include post-petition interest. *See Saunders*, 130 B.R. at 213. If Congress intended the term "claim" to include post-petition interest, there would be no need for provisions such as §§ 502(b)(2) or 506(b), both of which deal with the ability of creditors to obtain post-petition interest in addition to the amount of their claim.

■ Post-petition interest results in a lower dividend for the general unsecured creditors and would be unfairly discriminato-

ry if awarded. Accordingly, Debtor's separate classification of co-signed, unsecured, consumer debts is not entitled to receive post-petition interest under the Plan. Further, the Court finds that when a debtor separately classifies an unsecured creditor allowing it to receive the full amount of its claim, the creditor is not entitled to relief from the co-debtor stay during the life of the plan to obtain post-petition, contractual interest.

By eliminating Citizens State Bank's and GMAC's post-petition interest, the total amount the separate class of co-signed, unsecured, consumer claims will receive is $10,-138.00 ($2,700.00 + $7,438.00). The amount available for the general unsecured creditor pool is $9,226.73 [ ($16,406.60—$10,138) + $2,958.13], resulting in almost a 40% dividend for general unsecured creditors.

### SUMMARY

All three debts at issue here are consumer debts and were incurred for Debtor's benefit. Because Pat McGrath Chevyland's claim was fully assigned to GMAC, Debtor need not provide for any alleged debt to Pat McGrath Chevyland in her Plan. Debtor's separate classification of Citizens State Bank's claim and GMAC's claim satisfies the unfair discrimination test. Debtor has also satisfied both the good faith requirement and the liquidation versus reorganization test under § 1325. Debtor's separate classification of Citizens State Bank's claim and GMAC's claim is not entitled to receive post-petition interest.

Based on the foregoing findings, if Debtor wishes to conform her Plan, the Court proposes the following modifications to the present Plan:

| | | |
|---|---|---|
| 1. | Attorney fees | $ 800.00 |
| 2. | Secured claims | $10,926.18 |
| 3. | Separate class of co-signed unsecured claims | |
| | a. Citizens State Bank | $2,700.00 |
| | b. GMAC | $7,438.00 |
| | **Total** | $10,138.00 |
| 4. | All other unsecured claims | $ 9,226.73 |
| 5. | Trustee's fees | $ 3,109.09 |
| | **Total payments to the Plan** | $34,200.00 |

**WHEREFORE,** Debtor's separate classification of Citizens State Bank's claim and GMAC's claim is APPROVED.

**FURTHER,** Debtor's separate classification of Pat McGrath Chevyland's claim is DISAPPROVED.

**FURTHER,** Debtor's Chapter 13 Plan need not provide for any alleged debt to Pat McGrath Chevyland.

**FURTHER,** Debtor's separate classification of Citizens State Bank's claim and GMAC's claim is not entitled to post-petition interest.

**FURTHER,** if Debtor elects to modify her proposed plan to conform to this ruling, she shall do so within 10 days of the date of this Order.

**FURTHER,** if Debtor modifies her plan accordingly, she shall provide notice to all Creditors with a bar date. If the bar date passes without objection, the plan can be confirmed without further hearing. If objections are filed, this matter will be set for hearing.