In the Matter of Vincent J. DiDOMIZIO and Alexandria L. DiDomizio, Debtors.

**TIMEX FEDERAL CREDIT UNION, Plaintiff,**

v.

**Vincent J. DiDOMIZIO and Alexandria L. DiDomizio, Defendants.**

Bankruptcy No. 2–80–01027.
Adv. Proceeding No. 2–81–0134.

United States Bankruptcy Court, D. Connecticut.

May 22, 1981.

Francis J. Grady, Waterbury, Conn., for plaintiff.

Sean C. Butterly, Waterbury, Conn., for defendants.

MEMORANDUM AND DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

This adversary proceeding was commenced by a complaint to modify the automatic stay provided for by 11 U.S.C. § 1301 to permit the plaintiff to proceed against certain cosigners of notes upon which the debtors are indebted to the plaintiff.

On February 17, 1981, this court signed an order confirming a joint Chapter 13 plan filed by the debtors, Vincent J. and Alexandria L. DiDomizio. The plan as confirmed called for the payment of 100% of unsecured debt without interest by means of wage deductions from the salary of Vincent in amounts varying from $1,214.00 to $1,761.00 per month over a period of 60 months. Part of the unsecured indebtedness of the DiDomizios consists of three loans from the Timex Employees Federal Credit Union (credit union) scheduled in the amounts of $21,600.00, $4,700 and $2,000. These notes were cosigned on behalf of the DiDomizios by Alexandria's father, Anthony Romanauskas, Joseph Desena, and Edward A. Draskinis, respectively. The credit union claims in its complaint that, inasmuch as the plan provides for the payment of 100% of the principal and interest accrued to the date of the petition over five years, but makes no provision for post-petition interest, it is entitled to relief from the § 1301 stay in order to seek from each codebtor interest as it accrues on a monthly basis, and post-petition interest that has accrued in accordance with the original notes executed by the debtors and their codebtors. The cosigners were not made parties defendant although the credit union's attorney certified that copies of the complaint were sent to each cosigner. None appeared. The DiDomizios deny that the credit union is entitled to relief from stay and say that the credit union should wait until the end of the five-year plan to seek to collect this interest. The DiDomizios further claim that the spirit underlying the enactment of § 1301 is to prevent the result sought by the credit union and that their motivation to continue with this very substantial repayment plan will be adversely affected if the court grants the requested relief from stay.

Section 1301 entitled *Stay of action against codebtor* reads, in pertinent part:

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt . . . .

(c) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—. . .

(2) the plan filed by the debtor proposes not to pay such claim . . . .

Section 1301 was enacted to prevent a common practice under prior law whereby consumer creditors brought indirect pressure upon a Chapter 13 debtor to make preferential payment outside the plan by threatening to collect from friends or relatives who had cosigned a note for the debtor, by staying any action against such codebtors. The stay was not, however, intended to be absolute. The legislative history points out that:

The section governing the stay also provides for relief from the stay in certain circumstances, in order to protect the creditor's rights. If the debtor proposes not to pay a portion of the debt under his chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim, *including postpetition interests,* costs, and attorney's fees, if the contract so provides. Thus, if the debtor proposes to pay only $70 of a $100 debt on which there is a cosigner, the creditor must wait to receive the $70 from the debtor under the plan, but may move against the codebtor for the remaining $30 and *for any additional interest fees,* or costs for which the debtor is liable. The stay does not prevent the creditor from receiving full payment, including any costs and interest, of his claim. It does not affect his substantive rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.

H.R.Rep.No.595, 95th Cong., 1st Sess. 122 (1977). (*Emphasis supplied*). Cf. S.Rep. No.989, 95th Cong. 2d Sess. 138 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6083.

There is one direct holding that under § 1301(c)(2) a court should grant relief from stay to permit the collection from a cosigner of postpetition interest not provided for in the plan. *Matter of Leger,* 4 B.R. 718 (Bkrtcy.W.D.La.1980).[1]

The court is satisfied that § 1301(c)(2) was intended to provide relief from stay in the case before me. The plan proposed by the DiDomizios and confirmed by the court makes no provision for the payment of postpetition interest on the loans from the credit union. The mandatory directive of § 1301(c) and the explicit statement of congressional intention set forth in the cited legislative history require me to modify the stay herein, as requested, to permit the credit union to seek payment of postpetition interest from the codebtors according to the tenor of the notes they cosigned. Kennedy, *Automatic Stays Under The New Bankruptcy Law,* 12 Univ. of Mich. J. of L.R., 56 (1978).

---

1. The DiDomizios attempt to distinguish the *Leger* case from their own on the grounds that there the creditor was secured, and, presumably, the creditor would first seek to realize on its security before proceeding against the cosigner.