PER CURIAM:
 

 The plan submitted by Darrell W. and Pamela Harris, pursuant to a petition filed under Chapter 13 of the Bankruptcy Reform Act, provided for full payment of a promissory note due and owing to the Fort Oglethorpe State Bank (Bank). The note was secured and guaranteed by a co-signer, Joe Lewis Puryear. The automatic stay provisions contained in 11 U.S.C. § 1301 precluded the Bank from instituting collection proceedings against Puryear. On November 10, 1981, the Bank filed a “Request for Permission to Pursue Comaker” which was denied by the bankruptcy judge on January 7, 1982. On appeal to the district court, Judge Frank Wilson affirmed the bankruptcy judge’s order denying the Bank’s request, 21 B.R. 1019.
 

 In this appeal, the Bank argues that its request to start collection proceedings against Puryear should have been granted under either 11 U.S.C. § 1301(c)(2) or (3).
 
 [1]
 
 Section 1301(c)(2) permits a creditor to pursue collection from a comaker of the debt- or’s note where “the plan filed by the debt- or proposes not to pay such claim.” A creditor may also collect from the comaker under § 1301(c)(3) if its interest would be irreparably harmed by a continuation of the automatic stay. The district court, as well as the bankruptcy judge, found that the debtor’s plan provided for full payment of the note, and that the Bank had not demonstrated that it would be irreparably harmed if relief from the stay was not granted.
 

 The provisions of § 1301 were not designed to penalize a creditor who has a contractual right to rely upon the comaker’s assets. Rather, the purpose of the automatic stay is to enable the consumer-debtor to propose a repayment plan without undue pressure to give preference to a debt involving a co-signer. Congress believed that if a creditor could automatically reach the assets of a co-signer, who is generally a close friend or a relative of the debtor, then the co-signer would induce the debtor to give preference to that debt. Such a preference could easily frustrate the ability of the debtor to submit an acceptable plan. The legislative history leading to the enactment of § 1301 provides that:
 

 The automatic stay does not prevent the creditor from receiving full payment, including any costs and interest, of his claim. It does not affect his substantive rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.
 

 H.R. No. 595, 95th Cong., 2d Sess.,
 
 Reprinted in
 
 1978 U.S. Code Cong. & Ad.News 5787, 6082-84. The Bank relies upon an infrequently cited section of a Senate report to support its contention that it may collect from the comaker once the debtor has failed to make payments under the
 
 original note.
 
 S.Rep. No. 939, 95th Cong., 2d Sess., 138-39 (1978), U.S. Code Cong. & Admin.News 1978, p. 5924.
 
 [2]
 
 Although it is
 
 *1054
 
 barely arguable that this passage supports that proposition, a better reasoned interpretation of this passage is that a creditor ;may proceed against a comaker when the debtor has failed to make a required payment under the
 
 Chapter 13 plan. In re Harris,
 
 16 B.R. 371, 378 (Bkrtcy., E.D.Tenn.1982).
 

 The general purpose of the stay, therefore, is to protect the debtor from undue pressure when, in good faith, he is carrying out his obligations under his Chapter 13 plan. The rights of the creditor are not completely ignored. In order to assure that the creditor receives the benefit of its bargained-for guarantee, relief from the automatic stay is available under limited circumstances; when the debtor’s plan proposes not to pay the creditor in full; ■ or when failure to lift the stay would cause the creditor irreparable harm. The Bank has failed to convince us that the courts below were in error in denying relief under either of these alternative grounds.
 

 Both courts below found that the Harris’ plan provided for full payment of their indebtedness to the Bank, including post-petition interest. There is no evidence in the record before us to dispute this finding, and thus we affirm this portion of the district court’s order. The Bank next contends that the plan may be in operation for four years before it receives any payment and the natural consequences of carrying an unpaid debt for this long causes irreparable harm. This is so, the Bank argues, because federal regulations require that unpaid debts be charged off the Bank’s books within a matter of months, which in turn decreases the funds available for lending. After examining the legislative history, the district court concluded that delay, without more, would not support a finding of irreparable harm. We agree. In its appellate brief, the Bank argues, for the first time, that delaying collection efforts from the comaker for four years will cause it irreparable harm because in four years the comaker may be in bankruptcy or may have disappeared. We can appreciate the Bank’s concern over the comaker’s continued financial ability to repay the note, and the Bank may want to petition the bankruptcy court for a modification of the stay in order that it may be kept informed of the whereabouts of the co-signer and his financial ability to repay the note. On the other hand, these concerns of the Bank do not constitute irreparable harm without a showing of something more than delay alone. They are merely speculative fears that may or may not materialize. If in the future the Bank has evidence of the co-signer’s potential insolvency or unavailability, then it can once again proceed under § 1301(e)(3) and attempt to have the stay modified if not lifted entirely. We are not going to reverse the courts below on the basis of the Bank’s speculative assertions of irreparable harm.
 

 The judgment of the district court is affirmed.
 

 [1]
 

 . 11 U.S.C. § 1301 provides that:
 

 (a) Except as provided in subsections (b) and (c) of this section, ... a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
 

 [[Image here]]
 

 (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
 

 ♦ ifc Sfc * Si« ifc
 

 (2) the plan filed by the debtor proposes not to pay such claim; or
 

 (3) such creditor’s interest would be irreparably harmed by such stay.
 

 [2]
 

 . The pertinent section of the Senate Report provides:
 

 Under the terms of the agreement with the co-debtor who is not in bankruptcy, the creditor has a right to collect all payments to the
 
 *1054
 
 extent they are not made by the debtor at the time they are due. To the extent to which a Chapter 13 plan does not propose to pay a creditor his claim, the creditor may obtain relief from the court from the automatic stay and collect such claims from the co-debtor. Conversely, the co-debtor obtains the benefit of any payments made to the creditor under the plan. If a debtor defaults on the scheduled payments under the plan, the co-debtor would be liable for the remaining deficiency otherwise payments not made under the plan may never be made by the co-debtor. The obligations of the co-debtor to make the creditor whole at the time payments are due remain.