In re Subrina Y. ALLS, Debtor.

**First Franklin Financial Corporation, Movant,**

v.

**Subrina Y. Alls, Respondent.**

**Bankruptcy No. 98–50824–JSW.**

United States Bankruptcy Court, S.D. Georgia, Waycross Division.

Sept. 2, 1999.

Franklin D. Hayes, Douglas, GA, for debtor.

David M. Wolfson, Valdosta, GA, for First Franklin Financial Corporation.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Lift Codebtor Stay filed by First Franklin Financial Corporation ("Movant"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(G). After

considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

On April 18, 1997, Subrina Y. Alls ("Debtor") and her husband, Joe Alls, Sr. ("Codebtor"), signed a note and security agreement promising to repay a consumer loan to Movant. On August 14, 1997, Debtor filed a Chapter 13 bankruptcy case. Mr. Alls did not join Debtor in her petition. Movant filed a secured claim for $546.94 in Debtor's case. However, the claim was relegated to unsecured status after the trustee objected to the secured status because of Movant's failure to submit any documents supporting its claim of secured status. On January 27, 1999, Debtor's Chapter 13 plan was confirmed. Movant has filed a motion to lift the codebtor stay.

A hearing on the motion for stay relief was held on June 24, 1999. At the hearing, no evidence was offered in support of Movant's contention that the claim is secured. For that reason, the motion for relief on that basis will be denied. However, Movant's second basis for relief, that Debtor does not propose to pay the unsecured claim in full, presents a more difficult problem. Movant contends that because Debtor does not propose to pay the entire debt owing to it under the plan, including postpetition interest, the Court must lift the stay pursuant to 11 U.S.C. § 1301(c)(2). The note provides for the Debtor to pay interest at a rate of 43.86%. In response, Debtor has requested leave to amend her Chapter 13 plan to provide full payment of Movant's unsecured claim, including postpetition interest, if necessary to avoid lifting the stay.

## Conclusions of Law

"It is a settled question of law that relief from the codebtor stay is mandated to the extent that a Chapter 13 plan does not propose to pay a claim in full." *Citizens and Southern Nat'l Bank v. Rebuelta (In re Rebuelta)*, 27 B.R. 137 (Bankr.N.D.Ga.1983) (Drake, J.).[1] Therefore, it appears to be necessary that Debtor's plan provide full payment of Movant's claim in order to prevent a lifting of the stay. The difficult question presented by this motion is whether "full payment" of an unsecured claim, as contemplated by section 1301(c)(2), requires payment of postpetition interest on an unsecured claim which would not otherwise be paid with

---

1. *See also Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir.1983); *In re Schaffrath*, 214 B.R. 153, 155 (6th Cir. BAP 1997); *Household Fin. Corp. v. Jacobsen (In re Jacobsen)*, 20 B.R. 648, 650 (9th Cir. BAP 1982); *In re Campbell*, Ch. 13 Case No. 98–21406, slip op. at 2 (Bankr.S.D.Ga. July 7, 1999) (Davis, J.); *In re Janssen*, 220 B.R. 639, 645 (Bankr.N.D.Iowa 1998); *In re Pardue*, 143 B.R. 434, 437 (Bankr.E.D.Tex.1992); *In re Saunders*, 130 B.R. 208, 213 (Bankr. W.D.Va.1991); *In re Fink*, 115 B.R. 113, 115 (Bankr.S.D.Ohio 1990); *In re Austin*, 110 B.R. 430, 431 (Bankr.E.D.Mo.1990); *In re Binstock*, 78 B.R. 994, 996 (Bankr.D.N.D. 1987); *In re Bonanno*, 78 B.R. 52, 54 (Bankr. E.D.Pa.1987); *In re Lamoreaux*, 69 B.R. 301, 303 (Bankr.M.D.Fla.1987); *First Nat'l Bank v. Garrett*, 36 B.R. 432, 433 (Bankr.M.D.Tenn. 1984); *In re Sandifer*, 34 B.R. 507, 509 (Bankr.W.D.La.1983); *Wiremen's C.U. v. Laska (In re Laska)*, 20 B.R. 675, 676 (Bankr. N.D.Ohio 1982); *In re Harris*, 16 B.R. 371, 378 (Bankr.E.D.Tenn.1982); *International Harvester Employee C.U. v. Grigsby (In re Grigsby)*, 13 B.R. 409, 411 (Bankr.S.D.Ohio 1981); *Mid Maine Mut. Sav. Bank v. Johnson (In re Johnson)*, 12 B.R. 894, 895 (Bankr. D.Me.1981); *Timex F.C.U. v. DiDomizio (In re DiDomizio)*, 11 B.R. 357, 359 (Bankr.D.Conn. 1981); *First Pa. Bank N.A. v. Rondeau (In re Rondeau)*, 9 B.R. 403, 404 (Bankr.E.D.Pa. 1981); *Household Fin. Corp. v. Matula (In re Matula)*, 7 B.R. 941, 942 (Bankr.E.D.Va. 1981); *Household Fin. Corp. v. Weaver (In re Weaver)*, 8 B.R. 803, 805 (Bankr.S.D.Ohio 1981); *Commercial Sec. Co. v. Leger (In re Leger)*, 4 B.R. 718, 720 (Bankr.W.D.La.1980); *American Nickeloid Employee C.U. v. Pyzska*, 162 Ill.App.3d 84, 113 Ill.Dec. 519, 515

interest by the Chapter 13 Trustee. Courts are split in answering this question.

The codebtor stay is set out in 11 U.S.C. § 1301(a). That section provides, in pertinent part, as follows:

(a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—

(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or

(2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

. . . .

(c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—

(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;

(2) the plan filed by the debtor proposes not to pay such claim; or

(3) such creditor's interest would be irreparably harmed by continuation of such stay.

11 U.S.C. § 1301. The policy of this section is stated in its legislative history.

This section . . . is designed to protect a debtor operating under a chapter 13 individual repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor. The protection is limited, however, to ensure that the creditor involved does not lose the benefit of the bargain he made for a cosigner.

H.R.REP. No. 95–595, at 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6381. Thus, the codebtor stay is intended (1) to protect Chapter 13 debtors from indirect pressure from creditors, while at the same time (2) preserving for the creditor the benefit of its bargain in the form of a remedy against a cosigner. *Harris v. Fort Oglethorpe State Bank,* 721 F.2d 1052, 1053–54 (6th Cir.1983); *International Harvester Employee C.U. v. Daniel,* 13 B.R. 555, 557–58 (Bankr.S.D.Ohio 1981); *Timex F.C.U. v. DiDomizio,* 11 B.R. 357, 358 (Bankr.D.Conn.1981). These policies are furthered by ensuring that if the debtor's plan does not pay the full amount of the debt, the creditor can pursue the codebtor to the extent the plan does not propose to pay the claim. However, understanding the bankruptcy process, Congress recognized that the creditor may be delayed in fully realizing the benefit of its bargain. *See* H.R.REP. 95–595, at 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6381 ("The creditor is delayed, but his substantive rights are not effected.").

In this case, Debtor's plan as proposed does not pay Movant's claim in full, thus triggering section 1301(c)(2). However, Debtor has requested leave to modify her plan to provide full payment of Movant's claim. So long as such a modification can

N.E.2d 328, 329 (1987); *Manpoe F.C.U. v. Lee,* No. CV 920510269, 1997 WL 803859, at

*2 (Conn.Super.Ct. Dec. 19, 1997).

be confirmed, the benefit of Movant's bargain will continue to be preserved. *See International Harvester Employee C.U. v. Grigsby (In re Grigsby)*, 13 B.R. 409, 412 (Bankr.S.D.Ohio 1981). The question which remains to be answered, however, is whether full payment of the claim may include payment of postpetition interest. The difficulty in answering this question arises from the fact that, as a general rule, postpetition interest cannot be paid on an unsecured claim in bankruptcy. 11 U.S.C. § 502(b)(2).[2] Yet the legislative history to section 1301 states that the creditor "is entitled to full compensation, *including any interest*, fees, and costs provided for by the agreement under which the debtor obtained his loan." H.R.REP. No. 95–595, at 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6381 (Emphasis added). In addition, the legislative history states that

> If the debtor proposes not to pay a portion of the debt under his Chapter 13 individual repayment plan, then the stay is lifted to that extent. The creditor is protected to the full amount of his claim, *including postpetition interest*, costs and attorney's fees, if the contract so provides. Thus if the debtor proposes to pay only $70 of a $100 debt on which there is a cosignor, the creditor must wait to receive the $70 from the debtor under the plan but may move against the co-debtor for the remaining $30 and for any additional *interest*, fees, or costs for which the debtor is liable. The stay does not prevent the creditor from receiving full payment, including any costs and *interest*, of his claim. It does not affect his substantive rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.

H.R.REP. No. 95–595, at 122 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6083 (Emphasis added).

Thus the legislative history makes clear that preserving the creditor's bargain includes protecting its right to postpetition interest. *See In re Austin*, 110 B.R. 430, 431 (Bankr.E.D.Mo.1990); *Grigsby*, 13 B.R. at 411; *Mid Maine Mut. Sav. Bank v. Johnson (In re Johnson)*, 12 B.R. 894, 896 (Bankr.D.Me.1981); *West Beneficial Fin., Inc. v. Henson (In re Henson)*, 12 B.R. 82, 85 (Bankr.S.D.Ohio 1981); *DiDomizio*, 11 B.R. at 359. *But see In re Saunders*, 130 B.R. 208, 213 (Bankr. W.D.Va.1991) ("[W]hen a Chapter 13 plan proposes to pay an undersecured or unsecured creditor the full amount of such creditor's claim, the creditor is not entitled to recover postpetition interest ... from the codebtor, even if such items are provided for in the agreement under which the claim arises.").

The conflict between the language of the Code and the legislative history creates a dilemma for the debtor and the court. On the one hand, the Code prevents the debtor from paying postpetition interest on an unsecured claim, while on the other hand, the legislative history suggests that if the debt is not paid in full under the plan, including postpetition interest, the stay must be lifted. This apparent inconsistency has led to a split among the courts as to how to handle stay relief requests by creditors who are owed postpetition interest on an unsecured claim.

Some courts have concluded that if postpetition interest is not paid under the plan, the creditor is entitled to immediate relief from stay to pursue the codebtor for such amounts. *Henson*, 12 B.R. at 85 (relief from codebtor stay granted even though

**2.** This section provides, in pertinent part, as follows:

> (b) ... if ... objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—
>
> ....
>
> (2) such claim is for unmatured interest[.]

11 U.S.C. § 502(b)(2).

plan paid 100% of principal and prepetition interest because plan did not pay postpetition interest); *DiDomizio,* 11 B.R. at 359 (relief granted despite 100% payment of principal and prepetition interest under the plan because plan did not pay postpetition interest). In an effort to avoid this result, some courts have allowed the debtor to pay such interest under their Chapter 13 plans in order to prevent a lifting of the stay. *Campbell,* Ch. 13 Case No. 98–21406, slip op. at 2; *Fort Oglethorpe,* 721 F.2d at 1054; *Austin,* 110 B.R. at 431; *In re Harris,* 16 B.R. 371, 377 (Bankr. E.D.Tenn.1982). While some of these courts do not cite any authority allowing the debtor to pay such interest in their plan (*Ft. Oglethorpe; Harris* ), at least two courts have concluded that section 1322(b)(1) provides the authority, *Campbell,* Ch. 13 Case No. 98–21406, slip op. at 4; *Austin,* 110 B.R. at 431. That section permits a Chapter 13 debtor to treat codebtor claims differently than other unsecured claims. 11 U.S.C. § 1322(b)(1);[3] *In re Thompson,* 191 B.R. 967, 971 (Bankr. S.D.Ga.1996) (Walker, J.).

Other courts have concluded that a Chapter 13 debtor may not pay postpetition interest on a codebtor unsecured claim. *In re Janssen,* 220 B.R. 639, 645 (Bankr.N.D.Iowa 1998); *In re Saunders,* 130 B.R. 208, 213 (Bankr.W.D.Va.1991); *American Nickeloid Employee C.U. v. Pyzska,* 162 Ill.App.3d 84, 113 Ill.Dec. 519, 515 N.E.2d 328, 330 (1987). These cases note that the term "claim" as used in section 1301(c)(2) is defined by section 502 which does not permit postpetition interest. *Janssen,* 220 B.R. at 645; *Saunders,* 130 B.R. at 213. They further note that allowing a debtor to pay such interest on an unsecured claim renders sections 506(b), the section which expressly permits an oversecured creditor to receive such payment, and 502(b)(2) superfluous. *Janssen,* 220 B.R. at 645; *Saunders,* 130 B.R. at 213. Thus, these courts conclude that the term "claim" as used in section 1301(c)(2) can only consist of the principal and interest owing at the time the bankruptcy petition was filed. *See Janssen,* 220 B.R. at 645–46; *Saunders,* 130 B.R. at 213. As a result, the court in *Janssen* concluded that so long as the debtor's plan proposes to pay such claim in full, the creditor is not entitled to section 1301(c)(2) stay relief during the life of the plan to collect postpetition interest from the codebtor. 220 B.R. at 646.

 The legislative history, not the provisions of the Code, have created the dilemma. The stated intent is not reflected in the provisions of the Code. While it may be convenient for the legislative body to state an abstract objective in its legislative history, it does not follow that seemingly inconsistent code provisions should be construed in conflict with their plainly worded and previously established meaning to give effect to the stated legislative intent. The job of integrating the legislative intent into the provisions of the Code belongs to the legislative branch, not the courts. Congress was fully capable of amending section 502(b)(2) to provide an exception for the allowance of a claim for unmatured interest in this case. Whether the omission is accidental or intentional is a matter for Congress, not the courts, to declare. Without the legislative history regarding the payment of interest, the provisions of section 1301(c)(2) would not be ambiguous. Our resort to legislative history is only invited in response to an ambiguity in a statute. A statute that is not ambiguous on its face, and which does not yield an absurd result, does not invite or permit reference to legislative history.

---

**3.** This section provides as follows:

(b) Subject to subsections (a) and (c) of this section, the plan may—

(1) designate a class or ·classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

11 U.S.C. § 1322(b)(1).

The legislative history is not given to us as the law. Its purpose is to explain ambiguities in the law. Legislative history cannot serve to authorize what the Code prohibits.

■■■ This court agrees with those courts that hold that a debtor may not pay postpetition interest on a codebtor, unsecured claim in its Chapter 13 plan.[4] Section 1301(c)(2) refers to payment of a "claim." Thus, unless one of three exceptions applies—1) the claimant is oversecured (section 506(b)), 2) the debtor is solvent (section 726(a)(5)), or 3) the debt is secured by income-producing collateral—the Code does not permit payment of postpetition interest on such claim under a Chapter 13 plan. 11 U.S.C. § 502(b)(2); *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1386 n. 10 (11th Cir.1990) (citing *In re Boston and Maine Corp.*, 719 F.2d 493, 496 (1st Cir. 1983)). While section 1322(b)(1) does permit separate treatment of codebtor unsecured claims, the section does not authorize payment of postpetition interest on such claims. Section 1322(b)(1) merely allows separate classification of codebtor, unsecured claims so that a debtor can pay more on such claims than on other unsecured claims. *See Thompson*, 191 B.R. at 969–71.

Congress allows special treatment of codebtor claims because, as a practical matter, debtors are more likely to favor payment of such claims over other unsecured claims in order to protect the codebtor who is often a family member or friend. Because the debtor is likely to pay such claims anyway, Congress felt Chapter 13 plans should reflect this practicality as an incentive to promote Chapter 13 cases and their viability. S.Rep. No. 98–65, at 17–18 (1983). However, while section 1322(b)(1) does permit special treatment of codebtor claims, it does nothing to determine the amount of those claims. That determina-

tion is made according to section 502, and section 502(b)(2) generally disallows payment of postpetition interest on unsecured claims.

■■■ The question to be answered is whether Debtor's plan proposes to pay the "claim." To be paid, a claim must be asserted by filing it with the court. Such a "claim" can include unmatured interest. 11 U.S.C. § 101(5). Before a claim can be paid, it must be allowed. Claims are deemed allowed if there is no objection. *Id.* § 502(a). If there is an objection, as in this case, the court is required to disallow the postpetition interest portion of the claim. *Id.* § 502(b)(2). Thus, the term "claim" as used in section 1301(c)(2) can consist only of the principal and interest owed on a debt at the time the bankruptcy petition is filed and may not include unmatured interest in the form of postpetition interest. But it does not follow from this finding that the stay must then be lifted to allow the creditor to collect the postpetition interest from the codebtor. To the contrary, so long as the debtor's plan proposes to pay the creditor's allowed claim in full, section 1301(c)(2) is not triggered and, therefore, the Court is without authority to grant the creditor relief from the codebtor stay.[5] If the issue of stay relief were controlled by the legislative history rather than the code, the answer might be opposite. The creditor may pursue the codebtor for the unpaid postpetition interest once the stay has expired pursuant to section 1301(a)(2).

The benefit of the bargain for the codebtor creditor is preserved, albeit postponed. Postponement is equity's workhorse in a bankruptcy reorganization. Postponement transforms the impossible into the feasible. The primary issue in a bankruptcy reorganization is the fairness of the postponement. Movant complains that the postponement of the interest is

---

4. This Court regrets that it cannot follow the precedent set in *Campbell* by another judge of this Court, the Honorable Judge Lamar W. Davis, Jr.

5. Movant has not alleged any other circumstances that might require relief from the stay. *See* 11 U.S.C. § 1301(c)(1), (3).

inconvenient to the creditor and expensive to the debtor. Unsecured creditors would argue that they suffer a disadvantage by the separate classification and are further disadvantaged by any payments made in the form of interest to the codebtor creditor. The fund from which all disbursements originate is the debtor's disposable income required to be paid by section 1325(b)(1).

The result in this case is required by the provisions of the Code that control the allocation of Debtor's limited funds. Just like creditors with secured claims who receive more favorable treatment, the unsecured creditor with recourse against codebtor is in a better position than an unsecured creditor without such recourse. Like the secured creditor whose secured claim is limited to the value of its collateral by section 506(a), the co-debtor creditor's claim is limited to the prepetition balance by section 502(b)(2). These limitations make it possible in some cases for creditors with neither collateral nor recourse to a co-debtor to receive a disbursement from the estate.

The rationale for bankruptcy law is balanced on a thin edge of good faith and common sense. This requirement is specifically stated in Chapter 13 by section 1325(a)(3) which requires that a plan be proposed in good faith. While it is reasonable to anticipate that a debtor is not likely to complete payments into a plan if a family member or close friend is financially disrupted by enforcement of a codebtor obligation, the delicate balance is disturbed when the fund is depleted or exhausted by payments of interest to the codebtor creditor during the plan, rather than after the case is concluded. The Code balances the inconvenience to the codebtor creditor against the benefit to unsecured creditors who, unlike codebtor creditors, will have no recourse for payment after the case is concluded.

It is argued that unsecured creditors have no cause to complain because they would receive no distribution if this were a Chapter 7 case. While this may be true, this is not a Chapter 7 case. It is likely that Debtor filed this case because Chapter 13 contains benefits which are not available in Chapter 7. The enjoyment of those benefits comes at a price to the debtor in the form of an obligation to create an estate from funds which would not be available to creditors in a Chapter 7 case. The balance in this case, as with all Chapter 13 cases, is not properly struck by suggesting that one or more creditors would be no better off in a Chapter 7 case. It is struck, instead, by fairly allocating the estate according to the provisions of the Code among the competitive interests of all creditors who have legitimate expectations arising out of a prepetition bargain with the debtor.

The cases which decide that the codebtor's claim has to be paid with interest raise additional problems. In the *Campbell* case decided in this district by Judge Davis where it was determined that the Trustee would be required to pay interest on the codebtor claim, the mechanics for the payment of that interest were not resolved by the decision. Under the Trustee's present system of paying claims, the specially classified unsecured claim of a codebtor creditor would be paid after secured claims. The interest component would likewise be paid later in the case. Judge Davis will have to decide in that case whether to accelerate the disbursements on that claim to an earlier time in the case and, if such disbursements are accelerated, determine whether secured creditors would be adequately protected after the necessary reduction in their disbursements in order to make such an accelerated payment to the codebtor creditor.

There is also the issue of priority and administrative expense claims. Like secured creditors, they compete for the first dollars paid into a Chapter 13 plan according to priorities established by the Code. To pay the codebtor creditor's unsecured claim earlier in the case would create conflicts with these other priorities estab-

lished by the Code. If the claim is not paid early in the case and is instead paid at the end according to its established Code priority, there is very little practical difference between paying interest under the plan and paying it after the plan is completed. The payment would occur at the same time either way.

Applying this analysis to this case, the Court finds that Debtor's plan must propose to pay Movant's claim in full in order to continue the codebtor stay. Because none of the three exceptions to section 502(b)(2)'s prohibition against payment of postpetition interest on a claim exist in this case, such claim cannot include postpetition interest and, consequently, cannot receive disbursements of interest from the Chapter 13 Trustee. The codebtor creditor would be stayed in the collection of its interest against the codebtor until the conclusion of the case.

Once Debtor's plan is modified to provide full payment of the claim (without interest) and the modification is confirmed, the Court will deny Movant's request to lift the codebtor stay. If such modification cannot be confirmed, then the Court will grant Movant's request and lift the stay to the extent the plan as confirmed does not propose to pay the claim.

An order in accordance with this opinion will be entered on this date.