**In re Brad DEEN and Stephane Deen, Debtors.**

**No. 00–50112–JDW.**

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

Sept. 29, 2000.

Robert H. Baer, Brunswick, GA, for Debtor.

Marvin L. Pipkin, Darien, GA, for Southeastern Bank.

James J. Jurich, Savannah, GA, for Chapter 13 Trustee.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Request for Relief from [Codebtor] Stay, and on Trustee's Motion to Confirm Plan as Amended. This is a core matter within the meaning of 28 U.S.C. §§ 157(b)(2)(G) and 157(b)(2)(L). After considering the pleadings, evidence and applicable authori-

ties, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Brad and Stephane Deen ("Debtors") filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 3, 2000. They listed Southeastern Bank ("Creditor") as a secured creditor holding a $2,237.48 claim. However, Creditor holds no security interest in Debtors' property. Debtors listed a "co-signer" as the security for Creditor's claim. On Schedule H, Debtors indicated that Debtor Brad Deen's father, Robert Lamar Deen, Sr. ("Codebtor"), endorsed Brad Deen's debt to Creditor.

Creditor filed its request for relief from the codebtor stay[1] imposed by 11 U.S.C. § 1301[2] on May 1, 2000, alleging that it held an unsecured claim in the amount of $2,329.57 and requesting relief to the extent Debtors' plan proposed not to pay its claim in full with interest at the contract rate. Debtors filed an amended Chapter 13 plan on June 19, 2000, to protect Codebtor from Creditor's collection actions and proposing to pay 100 percent of Creditor's claim at the contract rate of interest. Debtors also propose to pay Creditor's claim concurrently with secured claims. On July 26, 2000, the Chapter 13 Trustee ("Trustee") moved to deny confirmation of Debtors' plan as amended, but stipulated that the plan would be recommended for confirmation if Debtors modify the plan to propose payment of Creditor's claim in full without interest. No other party in interest has objected to Debtors' amended plan.

### Conclusions of Law

I. *Codebtor stay provides no exception to disallowance of postpetition interest*

 This case requires the Court to revisit the matter of interest payments and 11 U.S.C. § 1301. The codebtor stay established by Section 1301(a) protects Chapter 13 debtors from the indirect pres-

---

1. For convenience, the stay of actions against codebtors, provided by Section 1301(a) will be referred to as the "codebtor stay" in this opinion.

2. 11 U.S.C. § 1301 provides, in full,

 (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt, unless—
 (1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or
 (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.
 (b) A creditor may present a negotiable instrument, and may give notice of dishonor of such an instrument.
 (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided by subsection (a) of this section with respect to a creditor, to the extent that—
 (1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor;
 (2) the plan filed by the debtor proposes not to pay such claim; or
 (3) such creditor's interest would be irreparably harmed by continuation of the stay.
 (d) Twenty days after the filing under subsection (c)(2) of this section for relief from the stay provided by subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the debtor or any individual that is liable on such debt with the debtor files and serves upon such party in interest a written objection to the taking of the proposed action.

sure exerted by creditors through collection actions brought against codebtors who are typically relatives or close friends of the Chapter 13 debtor. *See In re Alls,* 238 B.R. 914, 917 (Bankr.S.D.Ga.1999) (citing *Harris v. Fort Oglethorpe State Bank,* 721 F.2d 1052, 1053–54 (6th Cir.1983); *Matter of Daniel,* 13 B.R. 555, 557–58 (Bankr. S.D.Ohio 1981); *Matter of DiDomizio,* 11 B.R. 357, 358 (Bankr.D.Conn.1981); *H.R. Rep No.* 95–595 at 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6381; *see also* 8 King, *Collier on Bankruptcy* ¶ 1301.01, pp. 1301–2 to 1301–3 (15th ed. rev.2000). The Code does not deprive a creditor with a claim against a codebtor of the benefit of its bargain, however, and " '[i]t is a settled question of law that relief from the codebtor stay is mandated to the extent that a Chapter 13 plan does not propose to pay a claim in full.' " *In re Alls,* 238 B.R. at 916 (quoting *In re Rebuelta,* 27 B.R. 137 (Bankr.N.D.Ga.1983)). relief from the codebtor stay to the extent that the debtor's Chapter 13 plan proposes not to pay the creditor's claim is specifically provided by Section 1301(c)(2).

In *In re Alls,* the Court denied a creditor's request for relief from the codebtor stay, holding that Section 502(b)(2)[3] disallows payment of postpetition interest in a Chapter 13 plan. *In re Alls* holds that Section 1301(c)(2) does not create an exception to the general rule providing for disallowance of claims for postpetition interest, and it does not afford relief from the codebtor stay simply because the debtor's plan does not propose payment of such disallowed claims. *See generally In re Alls,* 238 B.R. 914 (Bankr.S.D.Ga.1999); *accord In re Janssen,* 220 B.R. 639, 645 (Bankr.N.D.Iowa 1998); *In re Saunders,* 130 B.R. 208, 213 (Bankr.W.D.Va.1991). The Honorable Lamar W. Davis, Jr., reached the opposite conclusion in *In re Campbell,* 242 B.R. 547 (Bankr.S.D.Ga. 1999), and *In re Butler,* 242 B.R. 553 (Bankr.S.D.Ga.1999), holding that Section 1301(b)(2) creates an implied exception to Section 502(b)(2) similar to the exception expressly created by Section 726(a)(5).[4] Pursuant to the holding of *In re Campbell* and *In re Butler,* Chapter 13 debtors must either pay postpetition interest on a claim if a codebtor is liable with the Chapter 13 debtor on the claim, or the creditor will be relieved from the codebtor stay and al-

---

**3.** Section 502 provides, in relevant part,

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
>
> (b) Except as provided [elsewhere in Section 502], if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition and shall allow such claim ... *except to the extent that—*
> * * *
> (2) *such claim is for unmatured interest* [.]

11 U.S.C. § 502 (emphasis added).

**4.** Section 726(a) provides, in relevant part,

> (a) [P]roperty of the estate shall be distributed—

> (1) first, in payment of claims of the kind specified in ... section 507 ...;
> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection ...;
> (3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) ...;
> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages ...;
> (5) fifth, in payment of interest at the legal rate from the date of the filing of the petition on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
> (6) sixth, to the debtor.

11 U.S.C. § 726(a).

lowed to pursue the Chapter 13 debtor's codebtor for such postpetition interest.

■ The holding in *In re Alls* is reaffirmed here. The context of Section 1301(c)(2) unambiguously points to the conclusion that the term "claim," as used in Section 1301(c)(2), refers to the allowed claim that a Chapter 13 debtor may pay under a Chapter 13 plan. The claim to which Section 1301(c)(2) refers, is distinct from the more comprehensive "consumer debt" to which Section 1301(a) refers. Section 1301(a) stays actions against a codebtor to collect all or any part of a "consumer debt" on which a codebtor is liable with the Chapter 13 debtor regardless of whether such debt will be allowed or disallowed as a claim in the debtor's Chapter 13 plan. In contrast, Section 1301(c)(2) can refer only to the amount of the claim that the Chapter 13 debtor will be allowed to pay in the Chapter 13 plan.

As argued in *In re Butler*, the broad definition of the term "claim" provided in Section 101(5) is sufficiently expansive to encompass both allowed and disallowed claims. *See In re Butler*, 242 B.R. at 555–56. Section 1301(c)(2), however, requires the Court to inquire into the amount that a debtor proposes to pay under the plan.

Thus Section 1301(c)(2) must necessarily refer to an "allowed" claim, the amount that the Code will allow the debtor to pay pursuant to Section 502. *See In re Robinson*, 225 B.R. 228, 234 (Bankr.N.D.Okla. 1998) (plan proposing payment of disallowed claim cannot be confirmed because it does not comply with the operative provisions of the Bankruptcy Code).[5] Otherwise, Section 1301(c)(2) could be absurdly construed to require a Chapter 13 debtor, who needs to protect a codebtor from stay relief, to file a plan that cannot be confirmed because it proposes to make payments that the Code will not allow the debtor to make.

■ The absence of the term "allowed" in Section 1301(c)(2) does not create a special exception to the general rule, provided at Section 502(b)(2), disallowing claims for unmatured interest. In *In re Butler*, it was argued that because the Code identifies certain payable claims as "allowed" claims in Sections 726(a)(1)-(4), the modifier's absence in Section 1301(c)(2) implies that Congress intended to create an exception to the disallowance of postpetition interest similar to the Section 726(a)(5) exception.[6] *See In re Butler*, 242

---

**5.** "Allowance" and "disallowance" of claims does not refer to the validity or invalidity of the right to payment that the claim represents. Section 1328(a) may thus discharge Creditor's right to collect postpetition interest from Debtors, but disallowance of Creditor's claim for postpetition interest in Debtors' Chapter 13 plan does not effect the validity of Creditor's claim as against Codebtor. *Cf. In re Pardee*, 218 B.R. at 921–22 (creditor stayed from collecting disallowed postpetition interest on nondischargeable student loan from the estate may collect such from debtor personally after completion of the plan).

**6.** It was also argued in both *In re Campbell* and *In re Butler* that the legislative history of Section 1301 indicates that Congress contemplated that Chapter 13 debtors would be allowed to pay postpetition interest to protect

their codebtors. *See In re Butler*, 242 B.R. at 557–58; *In re Campbell*, 242 B.R. at 548. There is no dearth of cases that have cited such legislative history as authority for allowing Chapter 13 debtors to pay disallowed postpetition interest through their Chapter 13 plans. *See In re Butler*, 242 B.R. at 557–58 n. 2. However, in construing Section 1301(c)(2) to create an exception to the rule disallowing payment of postpetition interest, courts have inevitably made the fatal error of proceeding directly to legislative history to find the meaning of the statute. Legislative history and other extraneous sources of statutory meaning become relevant to statutory interpretation only when construction within the context of the Code itself is bedeviled by ambiguity. If courts read Section 1301(c)(2) within the context of the Code itself, there is no ambiguity in

B.R. at 556 n. 1. However, in using the term "allowed" in Sections 726(a)(1)-(4), the Code points to the exception provided in Section 726(a)(5) itself. The presence of the term "allowed" in Section 726(a) does not require construction of the term's absence elsewhere in the Code as implying a reference to both allowed and disallowed claims.

Sections 1122 and 1322, for example, do not refer to the classification of both allowed and disallowed claims. The Code does not explicitly identify the claims addressed in these sections as "allowed" claims, and it is not necessary for them to do so. Because it is understood that a disallowed claim is excluded from participation in a reorganization plan,[7] see Matter of Huckabee Auto Co., 33 B.R. 132, 139 (Bankr.M.D.Ga.1981),[8] it would be redundant to use the term "allowed" in referring to the claims addressed in Sections 1122 and 1322. Similarly, modifying the term "claim" with the term "allowed" in Section 1301(c)(2) would be redundant because the Chapter 13 debtor's plan may not provide for payment of claims other than allowed claims.

Furthermore, the third clause of Section 1322(b)(1) [9] creates no exception to the general rule disallowing postpetition interest, though some courts have held

need of clarification. It is apparent that the ambiguity erroneously perceived in Section 1301(c)(2) is imported into the Code from the legislative history. See In re Alls, 238 B.R. at 919–20; see also In re Campbell, 242 B.R. at 548 (courts "rely on the Code's legislative history" in granting codebtor stay relief when Chapter 13 plans do not propose payment of postpetition interest). If the intention of Congress is more correctly reflected in the legislative history than in the provisions of the Code, then Congress, not the courts, should enact the necessary amendments. For a court to supplement the statutory provisions of the Code with judicially created exceptions in the name of congressional intent would defy the Constitution's carefully crafted provisions for separation of powers. Any decision to grant stay relief to Creditor in this case must begin with a judicial finding of ambiguity in the statute, without reference to the legislative history. No such ambiguity is apparent to this Court, thus no reference to legislative history is allowed. To begin the analysis of this case with the legislative history rather than the statute, or to consider the legislative history for any purpose before concluding that the statute is ambiguous is as unwise as it is unprecedented.

7. Cases cited in In re Butler recognize this principle. In In re Pardee, for example, the court stated that even though a debtor's liability for postpetition interest on a student loan was nondischargeable, such postpetition interest could not be paid through the plan because, even though it was nondischarge-able, it was disallowed by Section 502(b)(2). Because the claim was nondischargeable, the creditor would be entitled to seek payment of postpetition interest from the debtor personally, but only after the debtor completed the plan. See In re Pardee, 218 B.R. at 921–22. Likewise, in In re Hemingway Transp., 954 F.2d 1 (1st Cir.1992), the court specifically stated that though the term "claim" is broadly defined in Section 101[(5)], "'allowance' remains a prerequisite to distribution under the Bankruptcy Code[.]" In re Hemingway Transp., 954 F.2d at 8.

8. The rule against paying disallowed claims may be subject to exception if (1) the claimant is oversecured, (2) the debtor is solvent, or (3) the debt is secured by income producing collateral. See In re Alls, 238 B.R. at 920 (citing In re Sublett, 895 F.2d 1381, 1386 n. 10 (11th Cir.1990)). None of these exceptions apply in this case.

9. Section 1322(b)(1) provides,

(b) [T]he plan may—
(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.
11 U.S.C. § 1322(b)(1) (emphasis added).

that it does. *See In re Alls*, 238 B.R. at 919 (citing *In re Campbell*, 242 B.R. at 549; *In re Austin*, 110 B.R. 430, 431 (Bankr.E.D.Mo.1990)); *see also In re Butler*, 242 B.R. at 557–58. The third clause of Section 1322(b)(1) indicates that a Chapter 13 plan may treat claims for consumer debt of the debtor differently than other unsecured claims if an individual is liable on such consumer debt with the debtor. Nothing in the clause indicates, however, that the provision for such different treatment constitutes an allowance of claims otherwise disallowed under the Code. The third clause of Section 1322(b)(1) clarifies that if a class of claims for unsecured consumer debt, on which an individual is liable with the debtor, is paid concurrently with secured claims as allowed by Section 1322(b)(4), such does not constitute unfair discrimination against other classes of unsecured claims that are not paid concurrently with secured claims.

■ Debtors' plan may thus provide for payment of Creditor's claim for principal and interest owed as of the date of the petition concurrently with secured claims pursuant to Sections 1322(b)(1) and 1322(b)(4). However, Section 502(b)(2) disallows interest on Creditor's claim. Trustee has objected to payment of postpetition interest, and no exception to the disallowance of postpetition interest on Creditor's claim is implicated in this case. Accordingly, the Court will deny confirmation of Debtors' plan since it provides for payment of postpetition interest on Creditor's claim.[10]

■ The Court also denies Creditor's request for relief from the codebtor stay so that it may pursue Codebtor for the postpetition interest that Debtors are not allowed to pay under their plan. Because neither Section 1301(c)(2) nor Section 1322(b)(1) creates an exception to the rule disallowing postpetition interest, granting Creditor relief from the codebtor stay in order to collect postpetition interest from Codebtor would effectively deny that Section 1301(a) in fact stays actions "to collect *all or any part* of" the debt in question. 11 U.S.C. § 1301(a) (emphasis added). If the term "claim" in Section 1301(c)(2) referred not to the amount that Debtors are allowed to pay through the plan but included Creditor's disallowed claim for postpetition interest, as well, relief from the codebtor stay would be appropriate. *See In re Alls*, 238 B.R. at 920. There are courts that have granted such relief, *see id.* at 918–19 (citing *In re Henson*, 12 B.R. 82, 85 (Bankr.S.D.Ohio 1981); *Matter of DiDomizio*, 11 B.R. at 359), but in doing so they effectively negate the language of Section 1301(a) that stays Creditors actions to collect "all or any part" of Codebtor's debt to Creditor. It follows that unless any creditor subject to the codebtor stay shows than an exception to Section 502(b)(2) exists in its particular case, such creditor may obtain relief from the codebtor stay to collect postpetition interest only if it shows, pursuant to Section 1301(c)(3), that its interest in collecting postpetition interest from the codebtor will be irreparably harmed by the continuation of the stay. Any other construction of the statute would fail to read the statute in a manner that gives meaning to all of its parts.

Accordingly, unless Creditor proves that continuation of the stay will cause it irreparable harm, Creditor's motion for relief from the codebtor stay must be denied, and Creditor must wait until this case is "closed, dismissed, or converted to a case

---

**10.** Debtors stipulated at the confirmation hearing that they would modify their plan to eliminate the interest on the codebtor claim if the Court follows its holding in *In re Alls* in this case as it has done.

under Chapter 7 or 11" to pursue Codebtor for payment of the disallowed portion of its claim. *See* 11 U.S.C. § 1301(a)(2); *see also In re Alls*, 238 B.R. at 921.

## II. *Chapter 13 Plan must Comply with Section 1325(a)*

 Debtors' Chapter 13 plan proposes to pay Creditor's unsecured claim concurrently with secured claims, while Debtors' other unsecured creditors will receive no dividend under the plan. Such a classification proposal is permitted by the Code. Pursuant to Section 1322(b)(4), "the plan may ... provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim[.]" Payment of an unsecured claim concurrently with secured claims while paying no dividend on other unsecured claims might raise the question of unfair discrimination against a class of unsecured claims designated pursuant to Section 1322(b)(1). *See* 8 King, *Collier on Bankruptcy* ¶ 1322.05[1], p. 1322–14. As stated *supra*, however, Section 1322(b)(1) clarifies that though a Chapter 13 plan may not unfairly discriminate against a class of unsecured claims designated pursuant to Section 1322(b)(1), a plan does not unfairly discriminate if it treats a claim for a consumer debt differently than other unsecured claims if an individual is liable with the debtor on such consumer debt, and if the circumstances of the case point to the actual need for such separate classification. *See In re Thompson*, 191 B.R. 967, 972–73 (Bankr.S.D.Ga. 1996). Accordingly, Debtors' plan complies with the law in providing payment of

Creditor's unsecured claim concurrently with secured claims, even though no other unsecured claim receives any payment, because Codebtor is liable with Debtors on Creditor's claim.

It is not sufficient for confirmation, however, that a Chapter 13 plan's provisions manifest mere compliance with the broad outlines of the Code. Even if Sections 1322(b)(1) and 1322(b)(4) provide for the special treatment of a claim on which a creditor has recourse to a codebtor, "such treatment must still remain true to the spirit and purpose of the Code." *In re Pope*, 215 B.R. 92, 94 (Bankr.S.D.Ga.1997). The Code itself reflects this, requiring the Court to determine whether the plan has been proposed in good faith before confirming it. *See* 11 U.S.C. § 1325(a)(3);[11] *In re Walsh*, 224 B.R. 231, 234 (Bankr. M.D.Ga.1998).

 In this case, the Court finds that Debtors have made a good faith proposal to pay Creditor's unsecured claim concurrently with secured claims. There might exist circumstances, however, in which such a provision would be regarded as having been made in bad faith, even if no party raised an objection to such provision. For example, if a debtor's sixty-month plan proposed to pay an unsecured creditor concurrently with a creditor holding a claim for $500.00 secured by a lien on a twenty-year-old automobile, it is unlikely that the Court would find that the plan was proposed in good faith, and the Court would probably make such finding even if the secured creditor failed to object to confirmation of the plan.[12]

---

**11.** Section 1325(a)(3) provides,

(a) the court shall confirm a plan if—
(3) the plan has been proposed in good faith and not by any means forbidden by law[.]

**12.** The Court has expressed this "good faith" concern in other cases where debtors have proposed to pay for aging automobiles over five years. These plans typically fail because debtors find themselves paying for automobiles that are no longer serviceable after one or two years. Such financing is not available

**586**

III. *Codebtor stay is not unconstitutional taking*

 Creditor argued at the hearing that denying relief from the codebtor stay would effect a taking of its property without due process of law in violation of the Fifth Amendment to the United States Constitution. While it is true that Creditor suffers the inconvenience of delay, inconvenience is not equal to unconstitutionality. Though Debtor's case under Chapter 13 delays Creditor's rights against Codebtor, Creditor's rights against Codebtor are not abolished by this proceeding. If Creditor has reason to believe that its interest will be irreparably harmed by continuation of the stay, Creditor is invited to make further requests for relief from the codebtor stay pursuant to Section 362(d). Such reasons might include a demonstrable decline in Codebtor's income, or Codebtor's demonstrable waste of property that Creditor might attach in satisfaction of a judgment it might win against Codebtor. Mere speculation that Codebtor may be unable to satisfy Creditor's claim three to five years in the future is not sufficient grounds for relief from the codebtor stay.

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that Southeastern Bank's Request for relief from the Codebtor Stay is DENIED, and it is further

ORDERED that Trustee's Motion to Confirm the Plan as Amended is GRANTED subject to Debtors' modification of the plan to eliminate the provision for payment of interest on the codebtor creditor's unsecured claim; and it is hereby further

ORDERED that in the event Debtors decline to prepare such a modification within ten (10) days of the entry of this order, then the case will be dismissed.

in the commercial lending market. Accordingly, the Chapter 13 policy of extending repayment terms should not be construed to mean that lenders can be subjected to such unrealistic payment terms in Chapter 13 plans in this Court.